**Jean JOHNSON, Appellant**
**(Plaintiff Below),**

v.

**Lillie Mae PADILLA, M.D., Appellee**
**(Defendant Below).**

No. 2–1280A410.

Court of Appeals of Indiana,
Second District.

March 26, 1982.

Rehearing Denied May 14, 1982.

Mary Beth Ramey, Ramey & Hailey, Indianapolis, for appellant.

Edward Squier Neal, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for appellee.

SULLIVAN, Judge.

Jean Johnson appeals from a Summary Judgment entered against her in favor of defendant Dr. Lillie Mae Padilla Krishna (Dr. Padilla). She presents the following issues for review:

I. Whether the trial court was without jurisdiction to consider and grant Dr. Padilla's Motion for Summary Judgment; and

II. Whether the trial court erred in granting Dr. Padilla's Motion for Summary Judgment and overruling Johnson's Motion to Dismiss and/or Strike.

We affirm.

## I.

On November 8, 1978, Appellant Johnson filed a proposed Complaint for Damages against Dr. Padilla with the Commissioner of the Indiana Department of Insurance, pursuant to I.C. 16–9.5–9–1 (Burns Code Ed.Supp.1981). The complaint alleged that Johnson had given birth to a female infant at Wishard Memorial Hospital in Indianapolis in October 1976, and was re-admitted to Wishard in November 1976 when she exhibited post-partum hemorrhage secondary to retained products of conception. Johnson further alleged that she was a patient of Dr. Padilla, that around November 17, 1976, Dr. Padilla negligently performed a dilation and curettage (D & C) by scraping all of the endometrial tissue from Johnson's uterus and that as a result of Padilla's alleged negligence, Johnson is unable to conceive and bear children.

On December 15, 1978, James Stewart of the law firm Stewart, Irwin, Gilliom, Fuller & Meyer wrote a letter to the Department of Insurance indicating that his firm had been retained to defend Dr. Padilla in the proposed action filed by Johnson. Johnson's attorney did not receive a copy of the letter. On January 27, 1980, Dr. Padilla, by attorney Edward Squier Neal of Stewart's law firm, filed a Motion for Summary Judgment in Marion Superior Court, pursuant to Ind.Rules of Procedure, Trial Rule 56. Attached to the Motion was an affidavit of Dr. Padilla stating that she was a staff instructor with the Indiana University Medical School's Department of Obstetrics and Gynecology in November 1976, and that Dr. Robert Deaton was Senior and Chief Resident in the Department at that time. The affidavit further stated that when Johnson came to the Department experiencing massive vaginal bleeding, Dr. Deaton examined her and diagnosed her condition as post-partum hemorrhage secondary to retained products of conception and notified Dr. Padilla that he planned to perform a D & C. Dr. Padilla stated that she concurred in Dr. Deaton's plan without ever having seen, examined, or treated Johnson because she had "great confidence in Dr. Deaton's professional skills and ability."

Johnson's proposed complaint alleged that Dr. Padilla negligently performed the D & C. She did not allege that Dr. Padilla was liable under agency law nor that the decision to perform the D & C was negligently made. In her Motion for Summary Judgment, Dr. Padilla argued that she was not liable for any injury to Johnson resulting from the D & C, either directly or under agency law because no physician-patient relationship existed between Dr. Padilla and Johnson, and no agency relationship existed between Drs. Padilla and Deaton. Therefore, Dr. Padilla contended, she was entitled to judgment as a matter of law.

On February 16, 1979, John Forbes of the law firm Forbes, Mercer & Penamped, filed with the Insurance Commissioner a letter of appearance on Dr. Padilla's behalf in the proposed action, and sent a copy to Johnson's attorney. On June 6, 1980, Johnson filed a Motion to Dismiss and/or Strike Defendant's Motion for Summary Judgment, alleging that the court lacked subject matter jurisdiction and that Squier Neal had no standing to represent Dr. Padilla in the matter because he was not the attorney of record.[1] Dr. Padilla filed a response to Johnson's Motion to Dismiss and/or Strike on June 10, 1980. Oral argument was heard on the motions on June 27, 1980 and Summary Judgment was entered July 17, 1980.

Under the provisions of Indiana's Medical Malpractice Act, I.C. 16–9.5–1–1—16–9.5–10–5 (Burns Code Ed. Supp.1981), complaints filed against "qualified health care providers"[2] must be filed with the Commissioner of the State Department of Insurance and submitted to a medical review panel before they may be filed in a court. I.C. 16–9.5–9–2. However, under Chapter 10 of the Medical Malpractice Act, a party to a proposed complaint may invoke the jurisdiction of the trial court after the proposed complaint is filed with the Commissioner but before the medical review board renders its written opinion. I.C. 16–9.5–10–1. The court may preliminarily rule on affirmative defenses or issues of law or fact and/or sanctions regarding discovery. *Id.* Jurisdiction is invoked pursuant to I.C. 16–9.5–10–2 which provides in relevant part:

"Jurisdiction—Notice.—Any party to a proceeding commenced under this article, the commissioner or the chairman of any medical review panel, if any, may invoke the jurisdiction of the court by paying the statutory filing fee to the clerk and filing a copy of the proposed complaint and motion with the clerk. The filing of a copy of the proposed complaint and motion with the clerk shall confer jurisdic-

tion upon the court over the subject matter and the parties to the proceeding for the limited purposes stated in this chapter, . . ."

Dr. Padilla filed her Motion for Summary Judgment, along with a copy of the proposed complaint, in Marion Superior Court, paid the filing fee, and caused summons to issue to all parties, which pursuant to I.C. 16–9.5–10–2 conferred jurisdiction on the court for the limited purpose of ruling on the Motion. However, Johnson contends that the T.R. 56 Motion constituted a matter reserved for the medical review panel, and that the administrative review process should have been completed before the court's jurisdiction was invoked.

I.C. 16–9.5–10–1 provides that the court has no jurisdiction to preliminarily rule upon matters reserved for written opinion by the medical review panel under I.C. 16–9.5–9–7(a), (b), and (d):

"(a) The evidence supports the conclusion that defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.

(b) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.

. . . .

(d) The conduct complained of was or was not a factor of the resultant damages. If so, whether the plaintiff suffered: (1) any disability and the extent and duration of the disability, and (2) any permanent impairment and the percentage of the impairment."

However, the court is not precluded from preliminarily ruling upon matters covered by I.C. 16–9.5–9–7(c): "That there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury." Accordingly, the court here was not precluded from determining whether or not there existed a fac-

---

1. As to the issue of whether Neal was without standing to represent Dr. Padilla, Johnson has presented no authority or argument and thus the issue has been waived.

2. Dr. Padilla qualified under the Act; Dr. Deaton did not.

tual issue on a matter not requiring expert opinion. The issue of whether Dr. Padilla performed the D & C is an issue of fact which does not require expert opinion. *Bassett v. Glock* (2d Dist. 1977) Ind.App., 368 N.E.2d 18, 22; *Cochrane v. Lovett* (2d Dist. 1975) 166 Ind.App. 684, 337 N.E.2d 565, 570.

Johnson cites *Prendergast v. Nelson* (1977) 199 Neb. 97, 256 N.W.2d 657 as support for the proposition that once the panel process is underway, it must proceed to a conclusion, and that Dr. Padilla should not have filed the Motion in court until that process was completed. *Prendergast* was decided under Nebraska's Hospital-Medical Liability Act, which resembles the Indiana Act except for a provision in the Nebraska Act allowing a patient to elect not to come within the provisions of the Act by filing with the Director of Insurance and the health care provider the appropriate notice of election. 256 N.W.2d at 662. The Nebraska Supreme Court was referring to this provision when it stated that "if the cause of action arose while the parties were subject to the act, they remain subject to it until its determination." 256 N.W.2d at 667. Indiana has no comparable provision; thus *Prendergast* does not support Johnson's proposition.

We find that the trial court properly assumed jurisdiction for the limited purpose of ruling on Dr. Padilla's Motion for Summary Judgment.

## II.

### A.

■ The standard this Court applies in reviewing an entry of summary judgment is the same as that applied by the trial court: whether or not a genuine issue of material fact existed. *Richards v. Goerg Boat & Motors, Inc.* (3d Dist. 1979) Ind. App., 384 N.E.2d 1084. While the moving party has the burden of proving non-existence of a factual issue on a motion for summary judgment, when the affidavits or other evidence filed by the proponent establish lack of a genuine issue of material fact, the burden is on the opposing party to

demonstrate existence of a genuine issue for trial. *Middlekamp v. Hanewich* (3d Dist. 1977) 173 Ind.App. 571, 364 N.E.2d 1024; *Doe v. Barnett* (1969) 145 Ind.App. 542, 251 N.E.2d 688. The party opposing summary judgment may not rest upon the mere allegations of his pleadings, but must by affidavit or as otherwise provided by T.R. 56, set forth specific facts establishing a genuine issue for trial. T.R. 56(E); *Cunningham v. Universal Battery Division-Yardney Electric Corp.* (2d Dist. 1976) 170 Ind.App. 166, 352 N.E.2d 83. In her affidavit, Dr. Padilla stated that she never saw, examined, treated or prescribed medication for Johnson; that the only contact she had with Johnson's case was when Dr. Deaton routinely "staffed" his findings with her, and she concurred in his plan to perform a D & C. Johnson did not respond to the Motion and affidavit by setting forth specific facts establishing an issue as to whether Dr. Padilla performed the D & C. The gravaman of Johnson's proposed complaint is that Dr. Padilla negligently *performed* the D & C; no negligence was alleged as to the decision to perform the D & C nor as to her supervision of Dr. Deaton. Therefore, the trial court properly determined that Dr. Padilla was entitled to judgment as a matter of law and granted her Motion for Summary Judgment.

### B.

■ Johnson further argues that because the complaint filed with the Insurance Commissioner was only a "proposed complaint," it is implicit that it could be amended at any time prior to its submission to the Medical Review Panel. She contends that because the claimant may file a complaint in court after the panel renders its decision, the proposed complaint does not ripen into a claim until the Panel issues an opinion, and that therefore, the invocation of T.R. 56, which applies to "claims," "cross-claims," "counter-claims" and declaratory judgment was inappropriate. Appellant has cited no authority for this narrow construction of the term "claim" as not including a "proposed complaint" and we are not persuaded

by her argument. We believe that "proposed complaint" constitutes a "claim" within the meaning of T.R. 56, as that Rule is applied to preliminary matters appropriate for resolution in the courts.

For the above reasons, the judgment is affirmed.

BUCHANAN, C. J., and SHIELDS, J., concur.