Sharon HALBE, Appellant–Plaintiff,

v.

Howard WEINBERG, M.D.,
Appellee–Defendant.

No. 45A03–9310–CV–344.

Court of Appeals of Indiana,
Third District.

Feb. 21, 1995.

Julie R. Fouts, Smith & DeBonis, East Chicago, for appellant.

David C. Jensen, Gregory A. Crisman, Eichhorn, Eichhorn & Link, Hammond, for appellee.

HOFFMAN, Judge.

Plaintiff-appellant, Sharon Halbe, appeals the entry of summary judgment in favor of defendant-appellee, Howard Weinberg, M.D. The facts relevant to the appeal appear below.

In October 1982, Halbe consulted Dr. Weinberg and was diagnosed with bilateral fibrocystic disease. On November 10, 1982, Dr. Weinberg performed a bilateral reduction mammoplasty with subcutaneous mastectomy. In April 1983, Dr. Weinberg performed reconstructive surgery on Halbe during which he inserted two breast implants, each containing saline and 70 cc. of silicone gel.

Prior to the reconstructive surgery, Dr. Weinberg showed Halbe samples of saline and silicone implants. Halbe chose the saline implants which Dr. Weinberg "verbally approved." He indicated to Halbe that he would use the type of implants which she chose.

Subsequently, in January 1984, Dr. Weinberg performed further reconstructive surgery including a skin graft for areolar reconstruction and insertion of two new breast implants which contained saline and 90 cc. of silicone gel. In September 1984, Dr. Weinberg performed an open capsulotomy with implant replacement and insertion of two new breast implants, each containing saline and 450 cc. of silicone gel. At the time of each subsequent replacement implantation surgery, Dr. Weinberg indicated that he would use the same type of implants as initially used. Dr. Weinberg followed Halbe's progress after her discharge from the hospital.

In July 1986, Dr. Weinberg performed a resection of a mass detected in Halbe's left breast. Halbe again consulted Dr. Weinberg in 1988, at which time he removed a lesion on her eyelid. Halbe's last visit to Dr. Weinberg's office was on November 3, 1988. Dr. Weinberg recommended a mammogram; however, Halbe did not return for further care. Over the course of the next four years, Halbe consulted several health care providers for medical care. She did not consult any health care providers specifically regarding her breast implants.

In January 1992, Halbe became aware of media coverage regarding symptoms of other women who had silicone breast implants. On three separate occasions, Halbe telephoned Dr. Weinberg's office to inquire as to the contents of her breast implants. Dr. Weinberg's employee advised Halbe that she need not worry because her implants contained saline.

In February 1992, Halbe telephoned Dr. Weinberg's office and requested information pertaining to the possibility that her implants were leaking. Dr. Weinberg's employee informed Halbe that a xeromammogram could reveal a leak. Halbe requested the test which was ordered by Dr. Weinberg. On February 26, 1992, Halbe had the test at St. Margaret Hospital, Hammond, Indiana pursuant to Dr. Weinberg's order. Also in February 1992, Halbe obtained her hospital records and discovered that her implants contained silicone gel.

In April 1992, Halbe instituted a civil action against Dr. Weinberg and various manufacturers of breast implants and the component parts. In August 1992, Halbe filed an amended complaint and proposed complaint for medical malpractice. In September 1992, Dr. Weinberg filed his answer including the affirmative defense of the statute of limitations. On October 2, 1992, Dr. Weinberg filed a motion for summary judgment. A hearing was held in March 1993. In June 1993, the trial court granted summary judgment in favor of Dr. Weinberg. This appeal ensued.

One issue is dispositive on appeal: whether the physician-patient relationship terminated in November 1988.

■ Review of a ruling on summary judgment requires this Court to implement the same standard used by the trial court. This Court must liberally construe all designated evidentiary matter in favor of the non-moving party and resolve any doubt against the moving party. Even if it appears that the non-moving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences. Where material facts are not in dispute, the issue is the application of the law to the facts. *Fidelity Financial Services v. Sims* (1994), Ind. App., 630 N.E.2d 572, 574.

■ As acknowledged by Halbe, medical malpractice claims must be brought within two years after the date of the alleged act, omission, or neglect. *See* IND.CODE Section 16–9.5–3–1 (reenacted at IND.CODE Section 27–12–7–1 (1993)). It has been determined that the statute of limitations begins to run at the occurrence of the negligence rather than at the time the negligence is discovered. *O'Neal v. Throop* (1992), Ind. App., 596 N.E.2d 984, 986. Although Halbe brought her action more than two years after her last breast implantation surgery, she contends that the statute of limitations was tolled pursuant to the doctrine of fraudulent concealment.

Halbe's action is remarkably similar to the circumstances presented in *Weinberg v. Bess* (1994), Ind.App., 638 N.E.2d 841, Robertson, J. dissenting. In *Weinberg* this Court stated:

> "The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a violation of a duty, conceals material facts from the plaintiff to prevent discovery of the wrong. *Yarnell v. Hurley* (1991), Ind.App., 572 N.E.2d 1312, 1314, *trans. denied.* Equitable estoppel may arise either from active efforts to conceal the malpractice or from a failure to disclose material information when a fiduciary or confidential relationship exists between the physician and patient. *Id.* The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud. This constructive fraud *terminates at the conclusion of the physician-patient relationship,* at which time the statute of limitations begins to run. *Id.*" [Emphasis supplied]. *Id.* at 844.

Accordingly, Dr. Weinberg asserted on summary judgment that the physician-patient relationship terminated at Halbe's final office visit in November 1988. Thus, according to Dr. Weinberg, Halbe's malpractice action was time barred when she failed to institute proceedings by November 1990.

As did the plaintiff in *Weinberg*, Halbe contends that the physician-patient relationship continued through at least February 1992 because: 1) she continued to rely upon Dr. Weinberg as her sole physician with respect to her breast implants; 2) she continued to rely upon the advice of Dr. Weinberg and his employees through February 1992; 3) Dr. Weinberg ordered a mammogram for her in February 1992; and 4) through February 1992, she believed that she could continue to consult Dr. Weinberg.

■ Although a physician-patient relationship does not necessarily end with the patient's last office visit, a patient's bare assertion that she continued to rely upon a physician for medical care is insufficient as a matter of law to create a factual issue. *Id.* Here, there is no evidence of an active continuing relationship after November 1988. In November 1988, Dr. Weinberg recommended that Halbe submit to a mammogram. Halbe did not schedule the mammogram. Halbe could not resurrect the physician-patient relationship after expiration of the statute of limitations by consulting Dr. Weinberg's employees and requesting an order for a mammogram. *Cf. Id.* (patient could not revive relationship after statute of limitations by making subsequent appointment). The facts presented do not create a genuine issue of material fact as to termination of the physician-patient relationship.

The trial court's judgment is affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.