Debra DIXON, Appellant,

v.

Barbara K. SIWY, M.D., Appellee.

No. 49A02–9501–CV–1.

Court of Appeals of Indiana.

Feb. 26, 1996.

Raymond F. Fairchild, Indianapolis, for appellant.

Robert J. Shula, Richard S. Pitts, Lowe Gray Steele & Hoffman, Indianapolis, for appellee.

## OPINION

SULLIVAN, Judge.

Debra Dixon (Dixon) appeals the trial court's dismissal under Ind.Trial Rule 12(B)(6) [1] of her medical malpractice claim against Barbara K. Siwy, M.D. (Siwy). We conclude that, although the trial court more properly should have treated the motion as

---

1. Failure to state a claim upon which relief can    be granted.

one for summary judgment under Ind.Trial Rule 56, the ultimate disposition of the case is not affected by this conclusion, and we affirm.

The restated issues for our review are: Whether the trial court had jurisdiction to entertain Siwy's motion to dismiss Dixon's medical malpractice claim, and if so, whether the trial court properly dismissed the claim.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to Dixon, the non-movant, reveal that Dixon received breast implants in or around 1987. It appears that complications with these implants developed, and on October 15, 1991, Dixon sought treatment at Wishard Memorial Hospital (Wishard) for these complications. At Wishard, Dixon underwent a surgical procedure known as a left breast closed-capsular rupture. The doctor at Wishard who examined Dixon and performed the procedure was Dr. Janet Turkle (Turkle), a resident in Wishard's plastic surgery training program. Prior to performance of the surgery, and after consultation with Turkle, Dixon signed a form which purported to indicate that Dixon consented to performance of the surgery after having been informed of the nature of the procedure and the risks and possible complications. The "CONSENT AND PRE–OPERATIVE NOTE" read in part as follows:

"I (we) hereby request and consent to the performance of the following operation or procedure on the patient by Siwy, M.D., or members of the medical staff and personnel of Wishard Memorial Hospital ... [left breast closed-capsular rupture].... I acknowledge that I have had an opportunity to discuss with   Turkle  , M.D., the operation or procedure ... and risks and possible complications...." Record at 69

The names of Turkle and Siwy, who was at the time on the Wishard faculty in the plastic surgery program, had been written in spaces provided on the form as above indicated.

Despite the fact that Siwy's name had been written in the space, Siwy had not in fact seen Dixon, had not been consulted by Turkle, and had not in any way participated in or been aware of Dixon's condition or the decision to perform this procedure. Siwy's name appeared in the above space because it was common practice at Wishard for residents, who were already certified in general surgery, to simply fill in the name of a doctor on the faculty in that space, whether or not that particular doctor had in fact been consulted. Nevertheless, Dixon apparently believed Siwy would perform the surgery on her, and Dixon swore by affidavit that she preferred to have Siwy perform the procedure.[2]

On October 15, 1993, Dixon filed a proposed medical malpractice complaint under Indiana's Medical Malpractice Act against Siwy, Turkle, and Wishard with the Indiana Department of Insurance.[3] The complaint alleged, *inter alia*, that Dixon "employed" Siwy, Turkle, and Wishard to treat her; that Siwy and Turkle "performed surgery" on Dixon on October 15, 1991; that all defendants were "negligent in their care and treatment" of Dixon; and that the defendants "failed to warn" Dixon of the risks of the procedure. Record at 8. On February 4, 1994, Siwy filed a "Motion for Preliminary Determination of Law" with the trial court seeking dismissal of Dixon's proposed complaint. Siwy filed her deposition stating that she did not see, treat, or participate in any way in Dixon's diagnosis or care prior to or during the procedure. The trial court held a

2. Dixon's affidavit asserts that Dixon "had consulted with [Siwy] before." Record at 68. However, this consultation was apparently unrelated to the procedure which gave rise to this lawsuit. Dixon has not disputed that Siwy did not directly participate in the consultation, diagnosis, or performance of the procedure in litigation. Further, Dixon has not argued that this prior unrelated consultation forms the basis for any liability on Siwy's behalf.

3. The Medical Malpractice Act, now codified at I.C. 27–12–1 through 27–12–18 (Burns Code Ed. Repl.1994), was formerly located at I.C. 16–9.5–1 through 16–9.5–10 (West 1992). Under the terms of the Medical Malpractice Act, a plaintiff must, with limited exceptions not here applicable, file a proposed complaint before the Department of Insurance prior to filing a claim with a trial court. *See* I.C. 27–12–8–1 through 27–12–8–6.

hearing on the motion on May 5, and granted Siwy's motion to dismiss on June 9.[4]

## DISCUSSION

■ We first address *sua sponte* the issue of whether this motion was properly treated as one for dismissal under T.R. 12(B)(6), or whether more properly it should have been considered as a motion for summary judgment under T.R. 56. Ind.Trial Rule 12(B)(8) states:

"If, on a [12(B)(6) motion] to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

In this case, Siwy clearly presented material outside the pleadings in support of her motion, namely her deposition stating that she did not see or treat Dixon prior to the surgery. It is apparent that the trial court considered the deposition in rendering its decision, inasmuch as the face of Dixon's complaint alleged, *inter alia,* that Dixon "employed" Siwy, that Siwy "performed surgery" on Dixon in a negligent manner, and that Siwy "failed to warn" Dixon of the risks associated with the surgery. Record at 8. In a 12(B)(6) motion, the court is required to take as true all allegations upon the face of the complaint, and may only dismiss if plaintiff would not be entitled to recover under any set of facts admissible under the allegations of the complaint. *Morton–Finney v. Gilbert* (1995) Ind.App., 646 N.E.2d 1387, 1388, *trans. denied.* Given the above allegations, Dixon's claim clearly would withstand a 12(B)(6) challenge if only the face of the complaint were considered. Thus, the trial court must have considered Siwy's deposition in granting her 12(B)(6) motion, and in so doing placed the case in a summary judgment posture. *See Laux v. Chopin Land*

*Assoc. Inc.* (1993) Ind.App., 615 N.E.2d 902, 904, *trans. denied; Valley Fed. Sav. Bank v. Anderson* (1993) Ind.App., 612 N.E.2d 1099, 1101.

We note, however, that in *Hill v. Beghin* (1994) Ind.App., 644 N.E.2d 893, *trans. denied,* a panel of this court ruled that it was proper for a trial judge to refuse to treat a 12(B)(6) motion as one for summary judgment, despite the fact that both parties submitted, and the trial court may have considered, materials outside of the pleadings. 644 N.E.2d at 896. While the panel noted that it is "not permissible" for a trial court to consider these supporting materials, it concluded that because "[t]he matters submitted outside the pleadings did not raise genuine issues of material fact ... the trial court properly refused to treat [the] motion to dismiss as a summary judgment motion." *Id.*

■ We do not construe this language to imply that a trial court may consider materials external to the pleadings in determining that a complaint fails to state a claim for purposes of T.R. 12(B)(6). Rather, we believe the panel's language indicates that, when examination of the face of a complaint alone reveals that the plaintiff will not be entitled to relief under any set of circumstances, consideration of external materials aimed at substantiating or contradicting the complaint's factual allegations is irrelevant, because *a fortiori* the complaint fails to state a claim upon which relief can be granted under any factual scenario. In that instance, the trial court should exclude materials outside the pleadings which are submitted with a 12(B)(6) motion, rather than convert the motion into one for summary judgment, because the external materials are irrelevant to the motion. *See* 1 William F. Harvey, *Indiana Practice: Rules of Procedure Annotated* § 12.9 (Supp.1996); *cf. Runde v. Vigus Realty, Inc.* (1993) Ind.App., 617 N.E.2d 572, 574 (trial court action in not converting

4. The Chronological Case Summary indicates, for reasons that are unclear from the record, that the trial court reopened the case on August 30, 1994, and held another hearing on that date. The trial court re-issued its order of dismissal on September 1, and it is from this order that Dixon appeals. A computer printout, presumably intended to reflect the trial court's re-issued order,

indicates that "the complaint pending before the Indiana Department of Insurance should be dismissed with prejudice." Record at 121. We assume that the trial court ordered dismissal only as to Siwy, and not as to Turkle and Wishard, who were not parties to Siwy's motion before the trial court and are not parties to this appeal.

12(B)(6) motion into one for summary judgment despite presentation of external material was proper where "[t]he issue presented to the trial court was the failure to state a redressable claim," and "[the trial court] did not consider the material.").

In the present case, the face of the complaint was sufficient to withstand a 12(B)(6) motion, and the supporting materials, namely Siwy's deposition, were intended to contradict the allegations of the facially sufficient complaint. Thus, the issue presented to the trial court was not the sufficiency of the complaint itself, but the veracity of the factual allegations contained therein, and the trial court should have converted the motion into one for summary judgment.[5]

While the trial court erred in not considering the motion as one for summary judgment, this does not, in itself, constitute reversible error. Dixon presented no argument in this record either before the trial court or upon appeal, and we discuss it solely in the interests of clarity. *Cf. Ski World, Inc. v. Fife* (1986) Ind.App., 489 N.E.2d 72, 74 (where neither party presented argument on issue of trial court's misdesignation of hearing as one for summary judgment instead of motion to dismiss, appellate court simply noted misdesignation).

■ Ind.Trial Rule 12(B)(8) provides that, when a 12(B)(6) motion is to be treated as one for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." When a trial court treats a 12(B)(6) motion as one for summary judgment and does not afford the parties a reasonable opportunity to present such material, the trial court commits reversible error. *Carrell v. Ellingwood* (1981) Ind.App., 423 N.E.2d 630, 634. However, when the trial court does in fact afford the parties a reasonable opportunity to present external material, the failure to specifically designate a motion as one for summary judgment instead of dismissal under 12(B)(6) is deemed harmless error, and the appellate court will simply review the case as if arising from a grant of summary judgment. *See, e.g., ITT Hartford Ins. Group v. Trowbridge* (1993) Ind.App., 626 N.E.2d 567, 569, *trans. denied; Laux, supra,* 615 N.E.2d at 904; *Valley Fed. Sav. Bank, supra,* 612 N.E.2d at 1101.[6]

■ In this case, Dixon was given ample opportunity to present material external to the pleadings in opposition to Siwy's motion and in fact did submit such material, namely her affidavit.[7] It also appears that Dixon did not dispute the statements Siwy made in her deposition concerning her involvement, or lack thereof, in the treatment Dixon received. In fact, Dixon specifically cited Siwy's deposition *in toto* in her brief. There is no record that counsel for Dixon ever sought to present supplemental or additional material, and there is simply no indication that Dixon was prejudiced in any way by the trial court's failure to treat the 12(B)(6) motion as one for

---

5. In light of the designation requirements written into T.R. 56 in 1991, one might argue that a 12(B)(6) motion may not be converted into a Motion for Summary Judgment because to do so would run afoul of the designation requirements. However, the conversion process is one which takes place by operation of law in light of the trial court's action in considering material extraneous to the complaint itself. Accordingly, we hold that a summary judgment may be affirmed under such circumstances despite a seeming T.R. 56 designation failure.

6. *Cf. Ayres v. Indian Heights Volunteer Fire Dep't* (1985) Ind.App., 482 N.E.2d 732, 735–736 (trial court did not commit reversible error in designating hearing as being on motion to dismiss instead of summary judgment, then converting motion to summary judgment without notifying parties, where both parties availed themselves of opportunity to present material external to the pleadings at hearing, and appellant failed to show that she would have presented additional material if she had been notified of conversion), *vacated on other grounds* (1986) Ind., 493 N.E.2d 1229.

7. At the time of the May 5 hearing on Siwy's motion, which was filed February 4, Dixon had not filed a brief or response of any kind to the motion, except a request for an extension, from March 1 to March 7, to answer Siwy's motion. Dixon finally filed a response, which included Dixon's affidavit and a brief, on June 6, and the trial court dismissed Dixon's complaint on June 9. Obviously, Dixon's own tardiness in responding to the motion to dismiss does not in any way demonstrate that she suffered prejudice as a result of the trial court's failure to convert the motion to dismiss into one for summary judgment.

summary judgment. Thus, the error is harmless and we treat the appeal as if it comes from a grant of summary judgment.[8] *See* cases cited in text accompanying n. 6, *supra.*

■ As an initial matter, we must review whether the trial court had jurisdiction to even entertain Siwy's motion. Dixon argues that the trial court lacked jurisdiction to rule upon Siwy's motion, because the motion sought determination of the issue of whether Siwy complied with the applicable standard of care. It is Dixon's position that a trial court has no jurisdiction to rule upon such issues before the submission of an opinion by a medical review panel. We disagree. The motion actually sought determination of whether a physician-patient relationship between Siwy and Dixon ever existed, which is a determination of law for the court, and not the review panel.[9]

■ In medical malpractice cases such as the case at bar, a trial court has only limited jurisdiction prior to the submission of an expert opinion by a medical review panel. *Griffith v. Jones* (1992) Ind., 602 N.E.2d 107, 110. Most pertinent to the present case, a trial court has jurisdiction before the panel's opinion to determine "issues of law or fact that may be preliminarily determined under Trial Rule 12(D)." *Id.* However, the trial court has no jurisdiction "to rule preliminarily upon any ... issue of law or fact preserved for a written opinion by the medical review panel." *Santiago v. Kilmer* (1992) Ind.App., 605 N.E.2d 237, 240, *trans. denied.*[10] Issues preserved for the review pan-

8. We note that by choosing to appeal the trial court's grant of Siwy's motion to dismiss, instead of attempting to amend the complaint, Dixon has waived the right to amend the complaint pursuant to T.R. 12(B)(8), which allows amendment as of right within 10 days after a trial court grants a T.R. 12(B)(6) motion to dismiss. *See* 1 William F. Harvey, *Indiana Practice: Rules of Procedure Annotated* § 12.12 (1987). When a plaintiff opts to appeal the trial court's dismissal of her claim, rather than amend the complaint, the order of dismissal becomes an adjudication on the merits. *See Browning v. Walters* (1993) Ind.App., 616 N.E.2d 1040, 1044, *adhered to in part on reh'g,* 620 N.E.2d 33; *England v. Dana Corp.* (1970) 147 Ind.App. 279, 259 N.E.2d 433, 436. Thus, our ultimate affirmance in this appeal has the effect of extinguishing Dixon's claim against Siwy whether the appeal is disposed of in the context of summary judgment or a 12(B)(6) motion.

9. Dixon's appellate brief is an almost verbatim copy of the brief Dixon submitted to the trial court in opposition to Siwy's motion. It contains in its argument section little more than a lengthy reference to Siwy's deposition testimony (this testimony also comprises the complete statement of facts in the brief), a naked citation to the Medical Malpractice Act's section concerning expert opinions (cited to the former code section, which was repealed in 1993), and a conclusory recitation of "medical questions that can only be decided by the medical review panel". Br. of Appellant at 6–8. We remind counsel of Ind. Appellate Rule 8.3(A)(7), which requires that an argument presented be made with specificity setting forth the precise contentions, supported by legal reasoning and with citation to pertinent authority. *See Willsey v. People's Fed. Sav. & Loan* (1988) Ind.App., 529 N.E.2d 1199, 1209,

*trans. denied.* Dixon's appellate brief fails to meet this standard.

Dixon's reply brief more closely approaches this standard, as it does present a somewhat more relevant argument on the issue of the trial court's jurisdiction, and at least addresses the issue of whether Siwy owed Dixon any duty arising out of a physician-patient relationship, although no citation to pertinent authority is presented as to how the relationship could have been created in this case.

10. Citing *Griffith, supra,* the court in *Santiago* held that the jurisdictional defect presented when a trial court rules preliminarily upon an issue preserved for the medical review panel is one of subject matter jurisdiction, as opposed to jurisdiction over the particular case. 605 N.E.2d at 240–41. This principle has been reiterated in subsequent medical malpractice cases. *See, e.g., Albright v. Pyle* (1994) Ind.App., 637 N.E.2d 1360; *Putnam County Hosp. v. Sells* (1993) Ind. App., 619 N.E.2d 968.

Subject matter jurisdiction is the power of a court to hear a class of cases, while jurisdiction over the case is the power of a court to hear a particular case within the class of cases over which the court has subject matter jurisdiction. The difference between a jurisdictional defect based on subject matter jurisdiction and one based on jurisdiction over the case lies in two areas. First, a judgment rendered by a court which lacks subject matter jurisdiction is considered void, and may be attacked at any time, directly or collaterally. *Mann v. Mann* (1988) Ind.App., 528 N.E.2d 821, 822, *trans. denied.* By contrast, a judgment rendered by a court lacking jurisdiction over the case is voidable, and jurisdiction must be timely objected to, or the objection is deemed waived. *Sanders v. Carson* (1995) Ind.App., 645 N.E.2d 1141, 1145. Second, a court may *sua sponte* raise a question of subject

el include those pertaining to whether the defendant failed to meet the standard of care in treating the plaintiff, and it is clear that the trial court has no jurisdiction to rule upon whether the defendant met the standard of care until the review panel has submitted its report. *Id.; see* I.C. 27–12–11–1(b) (Burns Code Ed.Repl.1994).

■ A trial court does have jurisdiction, before the medical review panel has expressed its opinion, to rule upon issues not requiring expert opinion which can be preliminarily determined under T.R. 12. *Griffith, supra,* 602 N.E.2d at 110; *Johnson v. Padilla* (1982) Ind.App., 433 N.E.2d 393, *reh'g denied.* These issues can be ruled upon whether presented in the posture of a T.R. 12 motion to dismiss, *e.g., Hill, supra,* 644 N.E.2d 893, or a T.R. 56 motion for summary judgment, *e.g., Sizemore v. Arnold* (1995) Ind.App., 647 N.E.2d 697, *reh'g denied; Johnson, supra.* Thus, the trial court

had jurisdiction to entertain Siwy's motion if the motion sought determination of an issue of law or fact which, because it did not pertain to issues reserved for the medical review panel, could be determined by the trial court without aid of expert opinion.

■ Siwy's motion, whether characterized as a 12(B)(6) motion or one for summary judgment, was predicated upon the theory that, because Siwy never saw or treated Dixon prior to or during the surgery that gives rise to Dixon's claim, no physician-patient relationship was ever established between them, and thus, Siwy could incur no liability for any alleged malpractice. The facts pertinent to the extent of Siwy's involvement in Dixon's care are not in dispute; indeed, Dixon does not assert that Siwy saw or treated her, but instead argues that the physician-patient relationship arose "at the time [Dixon] signed the [consent] form". Reply Br. of Appellant at 5.[11] The trial court, therefore,

matter jurisdiction, while it is not obligated to note *sua sponte* an issue of jurisdiction over the particular case. *Matter of Adoption of H.S.* (1985) Ind.App., 483 N.E.2d 777, 780, *reh'g denied.*

The distinction is not germane to the present case, because Dixon has properly presented the jurisdictional issue to us. We do, however, express our disagreement with the view that a judgment rendered by a trial court in a medical malpractice case prior to the issuance of an opinion by the medical review panel is void for lack of subject matter jurisdiction. In our view, the Medical Malpractice Act specifically contemplates that a trial court has subject matter jurisdiction over the "class" of medical malpractice cases prior to the issuance of the review panel's opinion. Ind.Code 27–12–11–1(a), which outlines the scope of a court's authority to rule upon certain issues prior to the review panel's opinion, specifically states that it is a court "having jurisdiction over the subject matter and the parties to a proposed complaint", which can issue preliminary rulings. Conversely, I.C. 27–12–11–1(b), which states that the court "has no jurisdiction to rule preliminarily upon any affirmative defense or issue of law or fact reserved for written opinion by the medical review panel", does not state that the court lacks "subject matter" jurisdiction, only that it lacks "jurisdiction".

Further, neither I.C. 27–12–8–4, which restricts commencement of an action in a trial court until the review panel has issued its opinion, nor I.C. 27–12–11–2(b), which states that the filing of a copy of a proposed complaint "confers jurisdiction upon the trial court over the subject matter and the parties to the proceeding for the

limited purposes stated in this chapter," can be read to restrict the court's subject matter jurisdiction. Both of these provisions concern prerequisites which *a particular litigant* must meet in order to invoke the trial court's jurisdiction; they do not speak to the *nature or class of cases* a trial court can consider. The Medical Malpractice Act deals with a class of cases—medical malpractice—and does not divest an otherwise competent court of its ability to hear such cases. *See* I.C. 27–12–8–1. Thus, an otherwise competent court has subject matter jurisdiction over medical malpractice cases prior to the issuance of the review board's opinion. However, the review board must issue its opinion before the court acquires jurisdiction *over a particular case,* except for the preliminary matters which the court may consider, pursuant to I.C. 27–12–11–1(a), prior to the issuance of the review board's opinion.

The confusion regarding the distinction between subject matter jurisdiction and jurisdiction over a particular case is understandable, given that courts in this state have often discussed whether a particular court had "jurisdiction" without specifying which of the particular types of jurisdiction they were addressing. *See, e.g., Griffith, supra* at 111 ("We further hold that the trial courts of this State do not have jurisdiction to instruct the medical review panel concerning definitions of terms and phrases used in the Medical Malpractice Act...."). As used in the textual discussion accompanying this note, the generic phrase "jurisdiction" means jurisdiction over the case.

11. Though Dixon argues that a physician-patient relationship was created by this act, she also

was being asked to determine whether, given an agreed-upon set of facts, a physician-patient relationship between Siwy and Dixon ever existed. This issue is a legal question for the court, and is not reserved for the medical review panel. *See, e.g., Walters v. Rinker* (1988) Ind.App., 520 N.E.2d 468, 471–72, *trans. denied; Johnson, supra,* 433 N.E.2d 393; *cf. Halbe v. Weinberg* (1995) Ind.App., 646 N.E.2d 995, 997 (question of when physician-patient relationship terminated for statute of limitations purposes decided by court as question of law); *Weinberg v. Bess* (1994) Ind.App., 638 N.E.2d 841, 844, *reh'g denied* (same). Thus, the trial court had jurisdiction to entertain Siwy's motion.

■ Turning finally to the merits, we conclude, with considerably less expenditure of analysis, that the facts before the trial court demonstrate that a physician-patient relationship was never established between Siwy and Dixon, and that therefore summary judgment is proper in this case.

When reviewing a grant of summary judgment, an appellate court is bound by the same standard as the trial court. After considering all of the evidentiary material available to the trial court in the light most favorable to the non-movant, summary judgment is proper when the material facts are not in dispute and application of the law to the undisputed facts reveals that the moving party is entitled to judgment as a matter of law. *Halbe, supra,* 646 N.E.2d at 997; *Chambers by Hamm v. Ludlow* (1992) Ind. App., 598 N.E.2d 1111, 1116.

In this case, the material facts are not in dispute. Siwy's deposition indicates that she did not treat, see, or in any way participate in the care or diagnosis of Dixon prior to or during the surgery which forms the basis of this suit. Dixon does not dispute these facts,

and indeed appears to admit them by citing Siwy's deposition testimony *in toto* in her response. Dixon argues, however, that it is not necessary for Siwy to have ever personally seen or consulted with Dixon, because Siwy knew that the residents in the plastic surgery unit would place the name of a more senior physician at the top of the consent form presented to patients, and Siwy also knew that her name would be placed there from time to time.[12] However, Dixon cites, and our research has revealed, no authority for the proposition that a physician-patient relationship may be established without the physician performing some affirmative act with regard to the patient and without the physician's knowledge.

It is true that in *Walters, supra,* 520 N.E.2d 468, a panel of this court concluded that a physician-patient relationship was established where the physician, a pathologist who did not ever personally see or treat the patient, examined a tumor removed from the patient by another doctor and filed a report stating that the tumor was not malignant. However, in doing so the court noted the requirement that an act of some kind must be performed by the physician for the patient's benefit in order for a physician-patient relationship to develop. 520 N.E.2d at 471. In *Walters,* the act on the part of the physician "consisted of examining and diagnosing the tumor removed from [the patient]," and noted that "[the examination and diagnosis] was clearly performed for the purpose of diagnosing and/or treating [the patient]." *Id.* In the present case, Siwy simply did not undertake any act of any kind which could be construed as giving rise to a physician-patient relationship between her and Dixon.

This case is far more analogous to *Johnson, supra,* 433 N.E.2d 393, in which the plaintiff filed a complaint alleging that the

---

appears to assert that another kind of duty, presumably akin to but not the same as, the duty arising from the physician-patient relationship, should be imposed upon Siwy for Dixon's benefit, *i.e.,* "a duty that [Siwy] either becomes [sic] involved or, in the alternative, that [Siwy] notify [Dixon] that [Siwy] really is not getting involved" in Dixon's care. Reply Br. of Appellant at 6. This bald assertion is made completely without citation or reasoned argument. We simply will not attempt to flesh out for Dixon novel theories

of liability when she has so clearly failed to do so.

**12.** It should be crystal clear to any responsible and ethical professional organization or person that knowing falsification of official records or negligent misrepresentation of crucial facts and relationships cannot be tolerated. Nevertheless, such activity will not serve to create a physician-patient relationship where one would not otherwise exist.

defendant surgeon had performed a procedure negligently, and the surgeon defended on the grounds that she had never in fact performed the procedure, and had never seen or treated the patient. In that case, this court concluded that summary judgment was appropriate because no material fact existed as to whether the defendant had performed any act upon the plaintiff's behalf, and that therefore the physician could incur no liability. 433 N.E.2d at 396. *Johnson*, in fact, presented a marginally stronger factual scenario for the plaintiff than the case at bar, because the defendant physician in that case was at least aware of and concurred in the decision of the more junior doctor to perform the procedure. In the present case, Dixon has presented no evidence that Siwy was in any way aware of the decision by Turkle to perform the procedure on Dixon. In the absence of any evidence that there was a physician-patient relationship between Siwy and Dixon, there can be no liability on Siwy's behalf for the allegedly negligent care Dixon received. Summary judgment for Siwy was proper in this case.

### CONCLUSION

The trial court's order granting Siwy's motion for preliminary determination of law and entering judgment in favor of Siwy as to Dixon's proposed complaint with the Department of Insurance is affirmed.

SHARPNACK, C.J. and KIRSCH, J., concur.