**Robyn WOOD, Appellant–Plaintiff,**

v.

**Ronald SCHUEN, M.D., Appellee–Defendant.**

No. 18A04–0012–CV–524.

Court of Appeals of Indiana.

Dec. 31, 2001.

Rehearing Denied Feb. 20, 2002.

Steven L. Langer, Langer & Langer, Valparaiso, IN, Attorney for Appellant.

Michael D. Conner, Spitzer Herriman Stephenson Holderhead Musser & Conner, LLP, Marion, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Robyn Wood appeals from a grant of summary judgment in favor of Dr. Ronald Schuen in Wood's medical malpractice action against Schuen, among others,[1] in his capacity as cytopathology director for Pathologist Associated Medical Laboratories (PAML). Wood presents the following restated issues for review:

1. Did the trial court have jurisdiction to rule upon Schuen's motion for summary judgment?

2. Does the Clinical Laboratory Improvement Act provide a private right of action to individuals seeking relief for alleged violations of its provisions by laboratory personnel?

We affirm.

The facts in this case are not in dispute. Wood underwent a routine gynecological examination on February 13, 1996. Wood's gynecologist sent her Pap smear to PAML for evaluation. At that time, Schuen, a medical doctor, was the director

---

1. In her original complaint for damages, Wood and her husband, Terry, named as defendants two physicians at the Warsaw Women's Center, the Warsaw Women's Health Center, PAML, and two physicians employed at PAML, including Schuen and Dr. Tarik M. Elsheikh. On April 25, 2000, Wood notified the court that she was withdrawing her claim against Dr. Elsheikh. Of the remaining defendants, this appeal involves only the claims against Dr. Schuen.

of cytopathology[2] at PAML. The lab report issued from PAML indicated that Wood's Pap smear was normal. Sometime thereafter, Wood was diagnosed with cervical cancer. A subsequent evaluation of the February 1996 Pap smear revealed that it indicated the presence of cervical cancer, and therefore that PAML had misread the Pap smear.

On May 13, 1999, Wood filed a proposed complaint for damages naming Dr. Schuen, among others. The allegation against Schuen was as follows:

Commencing on or about February 13, 1996 and thereafter, continuing thorough and including at least December 29, 1998, the Defendants negligently failed to diagnose the plaintiff, Robyn Wood, as having cervical cancer even though there was evidence of said cancer as early as February 13, 1996 in a pap [sic] smear, which pap [sic] smear was misread as being normal, when in fact the pap [sic] smear revealed that the Plaintiff, Robyn Wood, had cervical cancer.

*Record* at 12.

After the filing of the complaint, Schuen served interrogatories upon Wood. Interrogatory No. 1 requested that Wood identify every alleged act or omission on Schuen's part that she claimed constituted negligence. On October 27, 1999, she answered that interrogatory as follows:

My pap [sic] smears were misread as being non-cancerous when in fact, they evidenced cancer. Discovery and investigation continue.

Further, Plaintiffs request that a Medical Review Panel be formed to conduct an independent inquiry into the nature,

cause and extent of my, Robyn Wood [sic], injuries.

*Record* at 65. On January 27, 2000, Schuen executed an affidavit containing the following paragraphs:

3. I have never met or provided any medical care to ROBYN WOOD. Further, I have never reviewed any pap [sic] smear slides for Robyn Wood. Specifically, I have reviewed the pathology reports for certain pap [sic] smear slides reviewed by PATHOLOGISTS ASSOCIATED, dated February 13, 1996, June 10, 1997, and August 11, 1998. While my name may appear on certain records for PATHOLOGISTS ASSOCIATED, indicating my association with PATHOLOGISTS ASSOCIATED, the records show that I did not review the aforementioned pap [sic] smear slides.

4. I have never had a physician/patient relationship with ROBYN WOOD.

*Record* at 14–15.

On February 2, 2000, Schuen filed a Motion for Preliminary Determination of Law and for Summary Judgment. In the motion, Schuen noted that the sole allegation of medical malpractice asserted against him by Wood, as reflected in the complaint and the answer to Interrogatory No. 1, was that he negligently misread Wood's Pap smear slides and thereby negligently failed to diagnose Wood as having cervical cancer. Schuen contended that there was no evidence that he had reviewed or examined Wood's Pap smear results or that he had a physician/patient relationship with Wood. Accordingly, he argued, there was no basis upon which to find that he had committed medical malpractice.

---

2. Cytopathology is a branch of pathology that deals with the manifestation of disease at the cellular level.

In partial response to Schuen's motion, Wood's attorney sent a letter to defense counsel on May 24, 2000, in which Wood purported to amend the answer to Interrogatory No. 1, as follows:

As director of Pathologists Associated Medical Laboratories, Dr. Schuen breached the standard of care and duties required of him pursuant to the Clinical Laboratories Improvement Act. Discovery and investigation continue. Plaintiffs request that a Medical Review Panel be formed to conduct and [sic] independent inquiry into the nature, cause and extent of my injuries.

*Record* at 75. On June 13, 2000, Wood filed her response to Schuen's motion, claiming that the "real issue" in the instant case is whether the trial court should "prevent the Medical Review Panel from screening a case where Dr. Schuen is charged, inter alia, with providing substandard health care to a patient, Robyn Wood[.]" *Record* at 85. Wood argued that the trial court did not have jurisdiction to rule upon Schuen's motion until the medical review panel reviewed Wood's complaint and issued a report.

The trial court granted Schuen's motion on October 13, 2000, issuing the following findings of fact and conclusions of law:

6. The WOODS' sole allegation of medical malpractice against DR. SCHUEN is that DR. SCHUEN allegedly misread a pap smear slide for Robyn Wood in February, 1996 ("the occurrence"). The WOODS failed to properly and timely designate to this Court any evidence showing any other allegation of negligence against DR. SCHUEN.

7. No physician-patient relationship existed between Robyn Wood and DR. SCHUEN at the time of the occurrence. The physician-patient relationship is one of consent. Here, DR. SCHUEN rendered no health care to Robyn Wood, nor did he consent to enter a physician-patient relationship with Robyn Wood, nor were his services secured on her behalf by any third party.

8. Absent a physician-patient relationship between Robyn Wood and DR. SCHUEN at the time of the occurrence, DR. SCHUEN owed no duty to the WOODS, and hence there was no medical negligence on the part of DR. SCHUEN as a matter of law.

9. Even if the WOODS had properly designated evidence to the Court showing that there was an additional allegation of negligence against DR. SCHUEN under the Clinical Laboratory Improvement Act ("CLIA"), said allegation would fail to state a claim upon which relief could be granted. CLIA imposes no duty on the part of the individual lab director which is owed to any patient. Further, CLIA does not establish a physician-patient relationship between the lab director and any patient, nor does it impose vicarious liability on the lab director for the acts of laboratory personnel. Absent a duty being imposed by the CLIA, which is owed to the patient by the physician, there can be no violation of such a duty. Thus, there is no cause of action under CLIA, against DR. SCHUEN, for negligence or negligence per se.

*Record* at 230–31. Wood appeals the grant of summary judgment in favor of Schuen.

1.

Wood contends that the trial court did not have authority to rule upon Schuen's summary judgment motion in a medical malpractice case "prior to a medical review panel considering the evidence and rendering its opinion[.]" Appellant's Brief at 12.

We interpret this argument as a challenge to the trial court's jurisdiction.

In a medical malpractice action, a party invokes the trial court's jurisdiction by paying the statutory filing fee and filing a copy of the proposed complaint. *See* Ind.Code Ann. § 34–18–11–2(a). After jurisdiction has been invoked in this manner, a trial court has only limited jurisdiction prior to the submission of an expert opinion by a medical review panel. *Rocca v. Southern Hills Counseling Ctr., Inc.,* 671 N.E.2d 913 (Ind.Ct.App.1996). IC § 34–18–11–1(a)(1) provides that a trial court has jurisdiction at this stage of the proceedings to "preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure." Thus, a party may invoke a trial court's jurisdiction at this stage of the litigation by filing a motion for preliminary determination. This procedure is unique to claims brought under the Medical Malpractice Act and permits the trial court to assume jurisdiction over threshold issues before the Medical Review Panel has acted. Ind. Code Ann. § 34–18–11–1 (1998); *Boggs v. Tri–State Radiology, Inc.,* 730 N.E.2d 692 (Ind.2000).

In the instant case, Schuen filed his motion for preliminary determination and summary judgment based upon the contention that there was no evidence that he analyzed Wood's Pap smear, which was the factual allegation underlying Wood's complaint. The designated materials reveal no conflicting evidence on that question; he did not analyze Wood's test. This, in turn, presented a pure question of law. That question was, given the undisputed facts, could Schuen be liable to Wood for *the Lab's* alleged negligence in reading her Pap smear? Inasmuch as this was a pure question of law, the trial court had jurisdiction to rule upon the motion.

In support of our determination in this regard, we note that, in *Dixon v. Siwy,* 661 N.E.2d 600 (Ind.Ct.App.1996), in a Ind. Trial Rule 12(B) setting, the court of appeals decided that a trial court has jurisdiction before the panel renders its opinion to determine issues of law that do not require expert opinion. In that case, the trial court was asked to determine whether, given an agreed-upon set of facts, a physician-patient relationship ever existed between Siwy and Dixon. That question is similar to the issue before the trial court in the instant case. Here, as in *Dixon,* the issue is a legal question and therefore not one reserved for a medical review panel. Thus, because the motion for summary judgment presented a pure question of law, the trial court had jurisdiction to decide the issue before a medical review panel rendered a decision. *Dixon v. Siwy,* 661 N.E.2d 600.

2.

In essence, the trial court ruled that the director of a medical pathology laboratory does not, within the meaning of the Medical Malpractice Act, have a relationship with a patient whose test was sent there for analysis, where that director did not actually conduct the test. Wood contends that the trial court erred in making that determination and thereby rendering summary judgment in favor of Schuen. We resolve this question by examining the provisions of the Clinical Laboratories Improvement Act (CLIA).

Summary judgment is appropriate only where the designated materials reflect that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Pedraza v. City of East Chicago,* 746 N.E.2d 94 (Ind.Ct.App.2001). Upon appeal, the trial court's decision in that regard is cloaked with the presumption of

validity. *Id.* "The party appealing from an order granting a motion for summary judgment has the burden of persuading the appellate tribunal that the decision to issue the order granting summary judgment was erroneous." *Id.* at 99. Upon review, we consider the same issues that were before the trial court and follow the same process. We may not reverse a grant of summary judgment upon the basis that a genuine issue of material fact exists unless that material fact and the evidence relevant thereto were designated specifically to the trial court. Ind. Trial Rule 56(H). We will sustain the granting of a motion for summary judgment if it is sustainable by any theory or basis found in the record. *Pedraza v. City of East Chicago*, 746 N.E.2d 94.

Wood offers several arguments in support of her contention that the trial court erred in granting summary judgment in favor of Schuen. We note that none of those include the allegation that Schuen was personally negligent in reading Wood's Pap smear. In fact, the parties offer strong opposing views of the nature of the allegations of negligence and the meaning and import of the trial court's ruling. Wood contends that, in granting summary judgment, the trial court impermissibly narrowed the scope of Wood's allegations to include only the charge that Schuen personally misread her Pap smear. Of course, inasmuch as Wood concedes that Schuen did not evaluate that specimen, such a narrowing would effectively end the lawsuit against Schuen. Wood argues that the claims against Schuen include one arising under CLIA. Schuen responds that Wood did not allege that theory of liability in her complaint, answers to interrogatories, or designated materials, and therefore said theory was not placed before the court.

By way of review, in her proposed complaint, Wood alleged that Schuen negligently misread her Pap smear. During discovery, Schuen asked Wood to identify "every alleged act or omission on the part of Ronald L. Schuen, M.D." that constituted negligence. *Record* at 65. In answers dated October 27, 1999, Wood responded, "My pap smears were misread as being non-cancerous when in fact, they evidenced cancer." *Id.* On February 2, 2000, Schuen filed his Motion for Preliminary Determination of Law and for Summary Judgment. In support of his motion, Schuen offered the previously mentioned evidence that he did not, in fact, ever see Wood's Pap smear, much less analyze it. On May 24, 2000, Wood's attorney sent a letter to Schuen's attorney advising him that they were amending the answer to the interrogatory specified above. The amended answer was as follows: "As Director of Pathologists Associated Medical Laboratories, Dr. Schuen breached the standard of care and duties required of him pursuant to the Clinic Laboratories Improvement Act." *Record* at 75. On June 13, 2000, Wood filed her brief and designated materials in opposition to Schuen's motion for summary judgment.

The amended answer set forth above was included in Wood's designated materials. Wood and Schuen disagree on the question of whether that amended answer was sufficient to state a claim of liability under CLIA. According to Schuen, the amended answer was inadequate in both form and substance. Schuen contends that the amended answer was legally ineffective because it was not signed by Wood. In support of this argument, Schuen invokes the portion of Rule 33 of the Indiana Rules of Trial Procedure that states, in pertinent part:

> Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which

event the reasons for objections shall be stated in lieu of an answer. The answers are to be signed by the person making them, and the objections signed by the attorney making them.

T.R. 33(B).

■ Although it is true that T.R. 33 specifies that interrogatory answers should be signed by the party, we have indicated that we will not elevate form over substance in that regard. In *Vlatos v. Indiana Bonding & Sur. Co.*, 166 Ind.App. 88, 333 N.E.2d 835 (1975), this court noted that there are occasions where answers to interrogatories are executed by a party's attorney. We reiterate now, as we did then, that we do not encourage that practice. Nevertheless, unless there is a claim that such answer was false and procured through the opposing party's fraud and connivance, the answer constitutes the answer of the party on whose behalf it is made. *Id.* Accordingly, we may consider the amended answer to Interrogatory No. 1 in determining whether Wood presented a claim under CLIA.

Clearly, the amended answer presents a claim for breaching the standard of care under CLIA. *See, e.g., Miller by Miller v. Memorial Hosp. of South Bend, Inc.*, 679 N.E.2d 1329, 1332 (Ind.1997) ("[w]hile a medical malpractice plaintiff must, as a prerequisite to filing suit, present the proposed complaint for review and expert opinion by a medical review panel, there is no requirement for such plaintiff to fully explicate and provide the particulars or legal contentions regarding the claim").

■ We turn now to the question of whether Schuen may be found personally liable to Wood for PAML's alleged noncompliance with CLIA. Our research reveals that there is no authority in federal or state law for the proposition that CLIA provides a private cause of action to persons seeking relief for alleged violations of its provisions. Nearly every provision of CLIA explicitly delegates oversight of clinical laboratories such as PAML to the Secretary of Health and Human Services. *See, e.g.,* 28 U.S.C. § 2639(a) (Secretary issues a certificate to allow a laboratory to conduct certain tests); 42 U.S.C. § 263a(d)(2)(B) (Secretary must be notified of changes in laboratory examinations and procedures); 42 U.S.C. § 263a(e) (Secretary approves and disapproves laboratory accreditation body); 42 U.S.C. § 263a(f)(1) (Secretary issues standards to assure consistent performance by laboratories that are certified under this section of valid and reliable laboratory examinations and other procedures); and 42 U.S.C. § 263A(n) (Secretary "shall compile and make available to physicians and the general public information .... which the Secretary determines is useful in evaluating the performance of a laboratory"). The foregoing provisions, and others like them, indicate that CLIA oversight is delegated exclusively to the Secretary of Health and Human Services. Nowhere is there an indication that CLIA was intended to create a private cause of action for those seeking relief for a laboratory's alleged violations of CLIA. This is especially so in view of the provisions in CLIA that address remedies and sanctions for noncompliance.

Our review of CLIA reveals that only the Secretary of Health and Human Services may impose intermediate sanctions for noncompliance. Those sanctions include: (1) imposing monetary civil penalties, 42 U.S.C. § 263a(h)(1) and (2); (2) suspending, revoking, or limiting certification of noncompliant laboratories including monetary civil penalties, 42 U.S.C. § 263a(i)(1) and (2); (3) seeking to enjoin the laboratory from continuing activity that creates a significant hazard to the public health, 42 U.S.C. § 263a(j). These

provisions make it clear that only the governmental agencies charged with overseeing laboratories' compliance with CLIA are responsible for enforcing its provisions and imposing penalties for noncompliance.

There is support for this view in the legislative history of CLIA. In 1988, Congress amended the 1967 version of CLIA in order to "resolve concerns that ha[d] been raised about deficiencies in" the original version. Clinical Laboratories Improvement Amendments of 1988, Pub.L. No. 100–578, 1988 U.S.C.C.A.N. (102 Stat. 2903) 3828, 3829. The amendments consisted primarily of provisions that clarified the role of private accrediting bodies, granted new and more flexible enforcement authority to the Secretary of Health and Human Services, and enacted requirements to assure the reliability of cytology screening. The provisions enacted to accomplish those goals were thorough and plentiful, and addressed a variety of topics germane to those tasks. Those provisions provide absolutely no indication that Congress created or intended to create a private cause of action based upon a laboratory's failure to adhere to the provisions of CLIA. We note that the only other similar case that we can find that has addressed the question reached the same conclusion. *See Whitehead v. Edmondson*, No. 1:97CV29–S–D, 1998 WL 173226 (N.D.Miss.1998). We acknowledge that *Whitehead* is an unpublished decision issued by a federal district court and therefore does not constitute binding precedent upon this court. We deem it worthy of mentioning, however, because it addressed precisely the same question that is presented in the instant case, and because of the dearth of other authority on this point.

Finally, we note that our holding does not indicate that persons whose lab results were misread by a laboratory are left without a remedy in the event that actionable negligence occurred. Rather, we decide today that the director of a laboratory is not personally liable to such a claimant merely by virtue of his or her position as director, especially where liability is based upon claimed violations of the provisions of CLIA. There must be a direct nexus between the director's actions and the alleged negligence upon which the claim of medical malpractice is based. Because Wood failed to designate materials demonstrating the existence of a question of fact with respect to the existence of such a direct nexus, and because a laboratory director does not incur personal liability for a private negligence action based upon alleged CLIA violations, the trial court did not err in granting summary judgment in favor of Schuen.

Judgment affirmed.

SULLIVAN, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent. The trial court exceeded its jurisdictional authority to make a preliminary determination of law under the Medical Malpractice Act. Under the Act it is the medical review panel's sole duty "to express the panel's expert opinion as to whether or not the evidence supports the conclusion that the defendant acted or failed to act within the appropriate standards of care as charged in the complaint." I.C. § 34–18–10–22(a). The grant of power to the trial court to preliminarily determine matters is to be narrowly construed. *Griffith v. Jones*, 602 N.E.2d 107, 110 (Ind. 1992).

The majority relies on *Miller by Miller v. Memorial Hosp. of South Bend, Inc.*, 679 N.E.2d 1329, 1332 (Ind.1997) for the proposition that a medical malpractice plaintiff must, as a prerequisite to filing

suit, present a proposed complaint for review and expert opinion by a medical review panel, and there is no prerequisite for such a plaintiff to fully "explicate and provide the particulars or legal contentions regarding the claim." While it is true that the Robyn's amended answer presented a claim for breaching the standard of care under CLIA, it also placed Schuen on notice of her request to have the medical review panel consider his role as medical director and any additional acts of negligence that may have been committed. In reviewing a dismissal under Trial Rule 12B(6), an appellate court must determine whether, in the light most favorable to the plaintiff and with every inference drawn in his favor, the complaint stated any set of allegations upon which the trial court could have granted relief. *Cram v. Howell,* 680 N.E.2d 1096 (Ind.1997).

In this appeal from the trial court dismissal, Robyn asserts that her complaint is sufficient to establish that Schuen had a duty of care in accordance with *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991), another case involving the evaluation of a physician's duty to a third party. To determine whether the doctor in that case owed a duty, the supreme court considered three factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person who was injured; and (3) public policy concerns. *Id.* at 995.

Balancing the three *Webb* factors, I find that Dr. Schuen owed a duty of care to take reasonable precautions as medical director for the protection of Robyn. As to the foreseeability factor, it is possible that when a medical review panel reviews the evidence it could find that a negligent act of an employee of PAML caused her injuries and that Dr. Schuen, as medical di-

rector, breached his obligations under CLIA by failing to properly supervise the laboratory personnel under his direction. If the institutional proceedings are faulty at PAML and have deviated from applicable standards of care, then any fault in procedures or the administration of the laboratory's testing could foreseeably bring injury to the patient.

Because cervical cancer develops so slowly from dysplasia to invasive cancer, it is usually preventable if discovered in its early stages using screening tests taken during regular gynecological examinations.[3] Thus, it is within the purview of the Indiana Medical Malpractice Act and sound public policy to safeguard the public from misread laboratory tests.

I would reverse the summary judgment entered by the trial court and remand the case to the trial court to deny Dr. Schuen's motion for summary judgment or preliminary determination and further remand this case to the medical review panel for its review and determination.

---

**3.** American Cancer Society guidelines for the early detection of cancer. CA Cancer J Clin. 2000 Jan–Feb; 50(1):34–49.