## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 17 2018, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael D. Conner
Spitzer Herriman Stephenson Holderead
Conner & Persinger, LLP
Marion, Indiana

ATTORNEYS FOR APPELLEE

Karl L. Mulvaney
Margaret M. Christensen
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anonymous N.P.,

*Appellant-Third-Party Defendant,*

v.

Anonymous Physician,

*Appellee-Defendant.*

July 17, 2018

Court of Appeals Case No.
03A04-1712-MI-3006

Appeal from the Bartholomew
Superior Court

The Honorable Kathleen Tighe
Coriden, Judge

Trial Court Cause No.
03D02-1708-MI-4652

**Bailey, Judge.**

# Case Summary

Anonymous Parents ("Parents") filed—individually and as next friends of their minor son, A.D.— a proposed complaint with the Indiana Department of Insurance alleging that Anonymous Physician ("Physician"), Anonymous N.P. ("N.P."), and Anonymous Hospital ("Hospital") committed medical malpractice. Thereafter, Physician sought from the Bartholomew Superior Court a preliminary determination of an issue of law, and filed a motion for summary judgment, asserting that he lacked a physician-patient relationship with A.D. The court granted Physician's motion, and N.P. now appeals, presenting the sole issue of whether the court erred in granting the motion.[1]

We reverse and remand for further proceedings.

# Facts and Procedural History

On September 1, 2015, Parents brought three-year-old A.D. to Hospital, reporting that A.D. put a watch battery in his nose. N.P., a nurse practitioner, confirmed through x-ray imaging that the battery was not in A.D.'s stomach or colon, but N.P. was unable to see the battery in A.D.'s nose. N.P. called Physician, the on-call specialist, who was on his way to a different hospital to see a patient. Physician told N.P. that he could see A.D. in a few hours or in his office the next morning, and Physician gave N.P. a message to relay to

---

[1] Parents do not actively participate in this appeal.

Parents: "to call his office at 8 a.m. and . . . that [Physician] wanted to see [A.D.] that day." Appellant's App. Vol. II at 55. Physician also ordered that A.D. be "NPO, which means to have nothing by mouth." *Id.*

[4] Parents wanted A.D. to be seen that evening, and asked if they could be seen at an Indianapolis children's hospital. N.P. then confirmed with an emergency medicine physician that there was no need to medically transport A.D., and that Parents could take him to the other hospital. Before Parents left, they received a copy of Physician's instructions not to give A.D. anything to eat or drink after midnight, to "call [Physician's] office at 8 am and let them know that he wanted your child to be seen in the am," and "to return . . . if any significant respiratory distress before then." *Id.* at 57.

[5] On April 19, 2017, Parents filed a proposed complaint with the Department of Insurance alleging that Physician, N.P., and Hospital committed medical malpractice. Parents alleged that at some point after leaving Hospital, white discharge began running from A.D.'s nose. Parents alleged that they then drove A.D. to an Indianapolis hospital, where a specialist removed a lithium battery approximately six hours after it became lodged in A.D.'s nose. Parents alleged that the delayed treatment caused severe injury to A.D.'s nasal tissue that led to the perforation of his septum, requiring surgery.

[6] Pursuant to Indiana Code Section 34-18-11-1, Physician sought a preliminary determination of a dispositive issue of law—namely, whether Physician had a physician-patient relationship with A.D.—and filed a motion for summary

judgment with the trial court. N.P. opposed the motion, and the court held a hearing. Following the hearing, the court granted the motion for summary judgment, determining that there was no physician-patient relationship. Thereafter, the court disposed of all malpractice claims against Physician by entering a final, appealable judgment pursuant to Indiana Trial Rule 54(B).

[7]     N.P. now appeals.

# Discussion and Decision

[8]     Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We review *de novo* whether the trial court properly granted summary judgment. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Moreover, "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the claim." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016). Summary judgment is inappropriate if the movant fails to carry this burden. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). However, if the movant succeeds, the burden shifts to the non-moving party to designate contrary evidence demonstrating the existence of a genuine issue of material fact. *Id.* In conducting our review, we look only to the designated evidence, T.R. 56(H), and construe all factual inferences in favor of the party who did not move for summary judgment, *Manley*, 992 N.E.2d at 673.

[9] The elements of a claim of medical malpractice "are '(1) that the physician owed a duty to the plaintiff; (2) that the physician breached that duty; and (3) that the breach proximately caused the plaintiff's injuries.'" *Siner*, 51 N.E.3d at 1187 (quoting *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1386 (Ind. 1995)). In the instant case, Physician sought to demonstrate that he owed no duty to A.D. because there was no physician-patient relationship between them. "[T]he existence of a duty is ordinarily a question of law for the court to decide, but it may turn on factual issues that must be resolved by the trier of fact." *Kopczynski v. Barger*, 887 N.E.2d 928, 931 (Ind. 2008).

[10] "[T]he duty owed by a physician arises from the physician-patient relationship," *Harper v. Hippensteel*, 994 N.E.2d 1233, 1237 (Ind. Ct. App. 2013), the existence of which is a "legal prerequisite to a medical malpractice cause of action," *Miller v. Martig*, 754 N.E.2d 41, 46 (Ind. Ct. App. 2001). "Generally, where a doctor does not treat, see, or in any way participate in the care or diagnosis" of a patient, there is no physician-patient relationship. *Id.* Rather, the existence of a physician-patient relationship turns on whether the physician "perform[ed] some affirmative act regarding the patient." *Giles v. Anonymous Physician I*, 13 N.E.3d 504, 511 (Ind. Ct. App. 2014), *trans. denied*. Ultimately, where the physician has made no affirmative act directed toward the patient's care, there is no physician-patient relationship. *See id.*

[11] According to N.P., the designated evidence indicates that Physician acted affirmatively toward A.D. and participated in his care, creating the requisite physician-patient relationship. N.P. focuses on designated evidence indicating

that Physician entered an NPO order, and asked N.P. to tell Parents that Physician "wanted" to see A.D. the following morning. Appellant's App. Vol. II at 57. N.P. also focuses on evidence indicating that Physician set forth options—treating A.D. that evening or the following morning; N.P. asserts that giving the options reflected a medical decision that treatment could wait.[2]

[12] In arguing that the designated evidence does not support a physician-patient relationship, Physician characterizes his interaction with N.P. as scheduling steps related to communicating his availability. Moreover, Physician asserts that the NPO order was "no more than an instruction as to the conditions under which he would be able to treat A.D. if the visit would occur the following day." Appellee's Br. at 17-18. Physician argues that such preliminary steps and communications concerning "the conditions of care" should not give rise to a physician-patient relationship.[3] *Id.* at 18. Physician also asserts that this case is factually analogous to *Giles*, in which we

---

[2] N.P. also focuses on Physician's contractual relationship with Hospital as an on-call physician, relying on a portion of a Hospital rulebook that addresses the creation of a physician-patient relationship. As we resolve this case on other grounds, we do not reach the contractual aspect of N.P.'s argument.

[3] To the extent Physician relies on *Johnson v. Padilla*, 433 N.E.2d 393 (Ind. Ct. App. 1982), for the proposition that ancillary involvement in patient care does not create a physician-patient relationship, Physician overstates the holding. In *Johnson*, the plaintiff alleged that the defendant physician had negligently performed a medical procedure. The physician sought summary judgment, designating evidence indicating that she was not the physician who performed the procedure, and that her involvement was limited to concurring with the care plan of the chief resident who performed the procedure. *Johnson*, 433 N.E.2d at 396. The plaintiff did not respond to the physician's motion for summary judgment, and "no negligence was alleged as to the decision to perform" the procedure. *Id.* Thus, in *Johnson*, this Court "merely held that a supervising physician who did no more than approve a subordinate's *decision* to operate was entitled to summary judgment on a complaint which alleged that the operation was negligently *performed*." *Walters v. Rinker*, 520 N.E.2d 468, 471 (Ind. Ct. App. 1988), *trans. denied*.

determined that no physician-patient relationship was formed between a patient and an on-call hospitalist where the hospitalist—before ever examining the patient—checked a chart, realized his group did not have a contract with the patient's primary physician, told the patient he could not treat her, and suggested that her surgeon contact the primary physician. 13 N.E.3d at 506-11.

Yet, the designated evidence most favorable to the non-movants indicates that Physician entered the NPO order, and gave specific instructions to Parents relating to when he "wanted" to see A.D. Appellant's App. Vol. II at 57. This evidence indicates that Physician affirmatively acted toward A.D. to personally participate in his care, thereby creating a physician-patient relationship and giving rise to a duty to A.D. We therefore conclude that Physician did not meet his burden in moving for summary judgment, and the trial court erred in granting Physician's motion. We reverse and remand for further proceedings.

# Conclusion

The trial court erred in granting summary judgment because Physician failed to negate an element of the medical malpractice claim.

Reversed and remanded.

Crone, J., concurs.
Brown, J., dissents with opinion.

| | |
|---|---|
| Anonymous N.P., | Court of Appeals Case No. |
| *Appellant-Third-Party Defendant,* | 03A04-1712-MI-3006 |
| v. | |
| Anonymous Physician, | |
| *Appellee-Defendant.* | |

**Brown, Judge, dissenting.**

[16]   I respectfully dissent from the majority's conclusion that a physician-patient relationship was established and gave rise to a duty owed from Physician to A.D.  I do not agree with the majority that Physician's conduct constitutes an "affirmative act" toward A.D. indicating that he would personally participate in A.D.'s care.  Nor can I agree with the characterization by N.P. that Physician "participated in the course of A.D.'s treatment when he had the discussion with [N.P.] as to when he could see A.D."  Appellant's Brief at 12.

[17]   I begin by observing the designated evidence at the center of these assertions, the affidavit of N.P., which is attached to her designation of evidence as Exhibit A and states in part:

> 8.  [Physician] was not in the Hospital so I contacted him via telephone.  [Physician] told me that he was on the way to Johnson Memorial Hospital to see another patient.

9. I provided [Physician] with a summary of [A.D.'s] presentation and the fact that neither I nor [the emergency medicine physician] could see the battery in [A.D.'s] nose.

10. [Physician] told me that he could either see [A.D.] at the Hospital in a few hours or in his office the next morning. He told me to tell [Parents] to call his office at 8 a.m. and tell them that [Physician] wanted to see [A.D.] that day.

11. [Physician] also instructed [A.D.] to be NPO, which means to have nothing by mouth. I would not have issued this order since I would not have known what [Physician's] needs would be for the procedure to remove the battery.

12. I advised [Parents] of [Physician's] call but they wanted [A.D.] to be seen that evening. They asked if he could be seen at Riley Hospital for Children in Indianapolis. Per [the emergency medicine physician], we did not need to transfer [A.D.]. [Parents] could take him directly there.

13. [Parents] were given [a] written copy of [Physician's] verbal instructions, a copy of which are attached as [Exhibit A-1] to this affidavit.

Appellant's Appendix Volume 2 at 55-56. The designated evidence additionally includes a document labeled "Exhibit A-1" titled "Patient Visit Summary" which states that "[A.D.] has been given the following list of patient education materials, prescriptions and follow-up instructions," "With: [Physician]," "When: In 1 week 09/08/2015," and "Comments: do not give child anything to eat or drink after midnight, call [Physician's] office at 8 am and let them know that he wanted your child to be seen in the am, return here if any significant respiratory distress before then." *Id.* at 57.

[18] To the extent that the majority asserts that Physician entered the NPO order and gave specific instructions to Parents, this Court found in *Dixon v. Siwy*, "no authority for the proposition that a physician-patient relationship may be established without the physician performing some affirmative act with regard to the patient and without the physician's knowledge." 661 N.E.2d 600, 607 (Ind. Ct. App. 1996). This Court interpreted the "affirmative act" requirement to mean:

> an act of some kind must be performed by the physician *for the patient's benefit* in order for a physician-patient relationship to develop. [*Walters v. Rinker*,] 520 N.E.2d [468, 471 (Ind. Ct. App. 1988)]. In *Walters*, the act on the part of the physician "consisted of examining and diagnosing the tumor removed from [the patient]," and noted that "[the examination and diagnosis] was clearly performed for the purpose of diagnosing and/or treating [the patient]."

*Id.* (emphasis added). Physician's acts – of informing N.P. that he could not see A.D. and of sharing with her future times when he would be able to provide care to A.D. – cannot be, as matter of law, an "act of some kind . . . performed by the physician for the patient's benefit" such that a physician-patient relationship would develop. *Id.* As for the instruction for A.D. to not eat or drink after midnight, an affirmative act, in my view, means something more than advice to abstain from certain activity until seen by another physician or provider.

[19] I would find that this case is analogous to *Giles v. Anonymous Physician I*, a case where the defendant, an on-call hospitalist, did not examine or treat the patient,

but rather was informed of the patient's condition over the phone by an attending physician and was asked by the attending physician to see the patient. 13 N.E.3d 504, 507 (Ind. Ct. App. 2014), *trans. denied*. After arriving at the post anesthesia care unit where patient was located, the defendant hospitalist checked her chart, determined she was not a hospitalist patient, and indicated to her that he would not be able to see her. *Id.* In that case, this Court concluded that the defendant hospitalist did not treat her nor perform any affirmative act with regard to her and that there was no physician-patient relationship. *Id.* at 511. *Giles*, in fact, presented a marginally stronger factual scenario for the plaintiff than the case at bar, because the defendant hospitalist in that case traveled to the patient's location and checked her chart – actions which I would find to be more akin to an "affirmative act" for the patient's benefit than those found in the present case.

[20] I conclude, on these facts, that no physician-patient relationship was formed. For the foregoing reasons, I respectfully dissent and would affirm the trial court.