Pam **KUEHNE** and Larry Kuehne, **Appellants–Plaintiffs,**

v.

**UNITED PARCEL SERVICE, INC., Appellee–Defendant.**

**No. 82A04–0607–CV–381.**

Court of Appeals of Indiana.

June 27, 2007.

Terry A. White, Olsen, White & Hambidge, Evansville, IN, Attorney for Appellants.

D. Bryce Zoeller, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

In this case, we are asked to resolve an issue of first impression in Indiana. Appellants-plaintiffs Pam and Larry Kuehne (collectively, the Kuehnes) appeal the grant of summary judgment in favor of appellee-defendant United Parcel Service, Inc. (UPS), regarding their claim against UPS for negligence after Pam tripped over a package that a UPS driver left on the Kuehnes' doorstep. Specifically, the Kuehnes argue that the trial court erred in determining that their claims against UPS were preempted by federal law. In response, UPS argues that the Kuehnes' claims are preempted because "Congress has barred the application of state laws to determine how UPS provides its services." Appellee's Br. p. 2. Concluding that the Kuehnes' claims against UPS are not preempted by federal law, we hold that summary judgment was improperly entered for UPS. Thus, we reverse the judgment of the trial court and remand this cause for trial.

## FACTS

The undisputed facts are that on September 21, 2000, UPS delivered a paraffin home spa that Pam had ordered to the Kuehnes' Evansville residence. The UPS driver placed the package on the front step of the Kuehnes' home. As Pam was leaving the house, she tripped on the package, which caused her to fall and sustain injuries. As a result, the Kuehnes filed a complaint against UPS on August 29, 2002, alleging that the UPS driver negligently placed the package on the steps and that UPS's negligence was the proximate cause of Pam's injuries. Larry also advanced a claim for loss of consortium.

On December 20, 2005, UPS filed a motion for summary judgment, asserting that the trial court was without subject matter jurisdiction over the case. Hence, UPS claimed that the Kuehnes' action should be dismissed. More specifically, UPS argued that the Kuehnes' claims were preempted by the Federal Aviation Administration Authorization Act of 1994[1] (FAAAA) and the Carmack Amendment to the Interstate Commerce Act.[2] UPS claimed that the controlling statutes precluded the enactment or enforcement of state laws that related to the "price, route, or service" of motor carriers and ground/air carriers such as UPS. Appellants' App. p. 15. Moreover, UPS argues that the Carmack Amendment exclusively governs a carrier's liability and shippers' remedies that arise from contracts regarding the interstate shipment of property.

Following a hearing on the motion for summary judgment that commenced on May 23, 2006, the trial court granted UPS's motion. The trial court determined that the Kuehnes' claim against UPS was "inherently a claim against [UPS's] services, which is preempted under the FAAAA." *Id.* at 11. As a result, the trial court ruled that "summary judgment is

---

1. 49 U.S.C. § 14501.

2. 49 U.S.C. § 14706.

entered in favor of [UPS], or in the alternative, [the Kuehnes'] complaint is dismissed under Trial Rule 12." *Id.* The Kuehnes now appeal.

## I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind.Ct.App.2004). Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

## II. The Kuehnes' Claims

In addressing the Kuehnes' argument that summary judgment was improperly granted for UPS, we initially observe that under the Supremacy Clause of the United States Constitution, federal law is the supreme law of the land. U.S. Const. art. VI, cl. 2; *Bondex Int'l v. Ott*, 774 N.E.2d 82, 85 (Ind.Ct.App.2002). The preemption doctrine invalidates those state laws that interfere with or are contrary to federal law. *Comty. Action Program of Evansville v. Veeck*, 756 N.E.2d 1079, 1084 (Ind.Ct.App.2001). By the same token, a

cardinal rule of preemption analysis is the "starting presumption that Congress d[id] not intend to supplant state law." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Moreover, the presumption against preemption takes on added significance "where federal law is said to bar state action in fields of traditional state regulation." *Id.* at 655, 115 S.Ct. 1671. Accordingly the historic police powers of the States are not to be superseded by a Federal Act "unless that was the clear and manifest purpose of Congress." *Micronet, Inc. v. Ind. Util. Regulatory Comm'n*, 866 N.E.2d 278, 285 (2007).

We note that three variations of federal preemption doctrine exist: (1) express preemption, occurring when a statute expressly defines the scope of its preemptive effect; (2) field preemption, occurring when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area; and (3) conflict preemption, occurring either where it is impossible to comply with both federal and state or local law, or where state law stands as an obstacle to the accomplishment and execution of federal purposes and objectives. *Id.* Put another way, congressional intent to preempt state law can be found in the explicit language of a statute, implied from the existence of a comprehensive regulatory scheme, or inferred when the state law in question directly conflicts with a federal law or stands as an obstacle to achievement of federal objectives. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). As we recently observed in *Micronet*, "[t]he question, at bottom, is one of statutory intent, and we accordingly begin with the language employed by Congress and the assumption

that the ordinary meaning of that language accurately expresses the legislative purpose." 866 N.E.2d at 288 (quoting *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)).

Turning to the relevant provisions of the FAAAA:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service of any motor carrier* ... or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphasis added).

In drafting the FAAAA preemption provisions, Congress adopted "the broad preemption interpretation adopted by the United States Supreme Court in *Morales v. Trans World Airlines.*" H.R. Conf. Rep. No. 103–677, at 83 (1994), U.S.Code Cong. & Admin.News 1994, 1715, 1755. In *Morales,* it was determined that the Airline Deregulation Act of 1978(ADA), which is currently codified at 49 U.S.C. section 41713(b)(1)-(3) and has language virtually identical to that in section 14501(c)(1) quoted above, preempted all state actions having "a connection with or reference to ... rate, routes, or services." *Morales,* 504 U.S. at 384, 112 S.Ct. 2031. The preemptive statutes are interpreted broadly and expansively. *Id.; see also Travel All Over the World v. Saudi Arabia,* 73 F.3d 1423, 1430 (7th Cir.1996) (affirming the view taken in *Morales* that state enforcement actions having a connection with or reference to airline rates, routes, or services are preempted). In the context of passenger airline services, courts have recognized that "Congress did not intend to displace or foreclose all tort actions arising under state law." *Somes v. United Airlines, Inc.,* 33 F.Supp.2d 78, 84 (D.Mass.1999). However, it has been determined that matters relating to "prices, schedules, origins, destinations or the point-to-point transportation of passengers, cargo or mail" are preempted. *Id.* at 83.

■ Through the years, courts in various jurisdictions[3] have held that claims based on the negligent services or prices of a carrier such as UPS fall within the broad scope of FAAAA preemption. Where no Indiana cases adequately address the issues involved in a case, decisions of other jurisdictions may be instructive. *See Associated Truck Lines, Inc. v. Pub. Serv. Comm'n of Ind.,* 492 N.E.2d 704, 713 (Ind. Ct.App.1986) (explaining that where no Indiana case law is on point our courts have looked to federal cases as persuasive authority). Moreover, we acknowledge that unpublished decisions issued by federal district courts do not constitute binding precedent upon this court. *Wood v. Schuen,* 760 N.E.2d 651, 659 (Ind.Ct.App. 2001). However, unpublished cases may be deemed worthy of mentioning when a similar issue is presented to us and there is a dearth of other authority on point. *See id.*

In *Rockwell v. United Parcel Serv., Inc.,* No. 2:99 CV 57, 1999 WL 33100089 (D.Vt. 1999), the plaintiff sought to impose liability on UPS for negligently delivering a package that contained a pipe bomb. The plaintiff asserted that UPS was negligent in its intake and delivery protocol by failing to have an inspection process as part of its delivery service. The court ruled that such claims against UPS "go to the heart of the services that UPS provides." *Id.* at \*2. The court further noted that "Rock-

---

**3.** The majority of these cases have not been published in the official reporters. Thus, our citations refer only to those set forth in Westlaw or Lexis.

well's complaint regarding UPS's package intake and delivery protocol is, beyond purview, inherently a claim against UPS's services which is also preempted." *Id.* Thus, the plaintiff's claims were preempted under the FAAAA provisions. *Id.* at *3. Additionally, because the plaintiff failed to advance any claims that were "cognizable under Vermont tort law," the complaint was dismissed. *Id.* at 4.

Also, in *Rowe v. United Parcel Serv., Inc.,* No. CV–S–96–862–PMP (RLH), 1996 U.S. Dist. LEXIS 11266 (D.Nev. July 31, 1996), the court dismissed the plaintiff's state law claims for intentional and negligent infliction of emotional distress and defamation, which were based on alleged defamatory statements made by a UPS employee who was investigating the contents of a package. *Id.* at 1–2. In the order of dismissal, the court cited the FAAAA, which "preclude[s] the application of state laws relating to the 'price, route or service' of common carriers such as UPS." *Id.*

In *Vieira v. United Parcel Serv., Inc.,* No. C–95–04697, 1996 WL 478686 (N.D.Cal. Aug. 5, 1996), the plaintiff, an inmate at San Quentin, arranged with the prison to ship two gold rings to a residence in Santa Rosa, California. *Id.* at *1. The plaintiff contended that the package containing the rings, which was purportedly sent via UPS, never arrived at its destination. The plaintiff then brought state law claims against UPS for negligence, conversion, and breach of contract. In granting UPS's motion for summary judgment, the court determined that the FAAAA preempted state law claims for negligence and conversion based on the allegations that UPS had lost the property. *Id.* The *Vieira* court observed that because UPS had properly limited its liability in the amount of $100 in accordance with federal law and the plaintiff-shipper failed to de-

clare a value that exceeded that amount, the plaintiff was bound by UPS's limitation of liability. *Id.*

Finally, we note that in *Deerskin Trading Post, Inc. v. United Parcel Serv. of America, Inc.,* 972 F.Supp. 665 (N.D.Ga. 1997), the plaintiff-shipper's complaint alleged causes of action under state law for fraud, negligence, unjust enrichment, breach of contract, and imposition of a constructive trust regarding the allegations that UPS had overcharged it. In response, UPS moved to dismiss the action except for a limited portion of the breach of contract claim, contending that the FAAAA preempted the plaintiff's state claims.

In discussing the principles set forth in *Morales,* the court determined that only the plaintiff's claim for breach of contract could proceed. *Id.* at 672–73. The *Deerskin* court observed that the preemption clause under the ADA as discussed in *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 232–33, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995),

> stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at 671. As a result, the *Deerskin* court observed that the plaintiff's " 'routine breach of contract claims' " were not preempted. *Id.* (quoting *Wolens,* 513 U.S. at 232–33, 115 S.Ct. 817). However, the plaintiff's state law tort action against UPS related to the prices, routes, or services

and constituted a "state enforcement action" that was preempted by the FAAAA. *Id.* at 672.

Notwithstanding the above authority, we are of the view that the purpose of the FAAAA was to address loss or damage to property, as opposed to personal injury. Moreover, Congress did not provide for any remedy in the statute to those who suffer a personal injury following the negligent delivery of a package. Although UPS maintains that *Rockwell* is necessarily dispositive of this case because the plaintiff in that case sustained personal injury in the pipe bomb incident, that complaint alleged that UPS should have used a "heightened and elaborate inspection process as part of its delivery service." *Rockwell*, at *3. Hence, the *Rockwell* court observed that

> [t]his would necessarily require that UPS, at a minimum and as stated in Plaintiff's Complaint, employ the services of "various and sundry technological devices such as metal detectors, X-ray machines, as well as trained dogs." Complaint at P. 5. Furthermore, UPS would not only be placed in a position where it must protect its receiving customers from potential explosives sent by its shipping customers, but Plaintiff seeks to impose a hodgepodge of state laws which would mandate various obligations upon UPS to protect the "general public" from "products or objects that may be hazardous and life threatening." *Id.* a P. 4.

*Id.* Thus, the *Rockwell* court determined [t]his would place UPS, and other carriers, in a position of segregating, sorting, screening and organizing its billions of packages based on their point of origin, where they are destined, over which states the packages might fly and through which airports the packages could foreseeably be transferred, divert-

ed or otherwise handled. Because these allegations are squarely within the preemptive language of 49 U.S.C. §§ 14501 and 41713 and since imposition of such a duty would necessarily impact directly upon UPS's services and pricing, the causes of action alleged are preempted by federal law.

*Id.*

Unlike the circumstances in *Rockwell*, the Kuehnes are simply maintaining that a package delivered by a UPS driver should not be placed squarely in front of a door where home and business owners could easily trip over it. In our view, such a contention represents a common sense approach to a delivery process that bears no overreaching consequences, contrary to those in *Rockwell*. Moreover, the *Rockwell* court dealt with a process *before* a parcel even reached its ultimate destination, whereas the circumstances here involved an occurrence *after* that package had reached its destination. It is apparent to us that the pre-delivery processes of UPS certainly relate to its services and that the FAAAA provisions should control in those instances. However, once a package is delivered, we cannot say that subsequent occurrences stemming from the alleged negligence of an employee amount to a "service" of UPS to the extent that federal preemption should apply in all causes of action that a plaintiff might institute against the company.

A number of courts have recognized that Congress did not intend to discredit all tort actions arising under State law. For instance, in *Somes v. United Airlines, Inc.*, 33 F.Supp.2d 78 (1999), a survivor of an airline passenger who suffered a fatal heart attack while traveling aboard an interstate flight sued the airline for wrongful death under Massachusetts law. *Id.* at 80. The complaint alleged that United Airlines was subject to liability because it failed to

equip its aircraft with certain medical equipment, including an external defibrillator. *Id.* Hence, the plaintiff maintained that the passenger would have survived if an in-flight emergency medical kit had contained such a device.

United Airlines moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the plaintiff's claim was preempted under federal law. The United States District Court denied the airline's motion, recognizing that "United's argument ... ignores the presumption against preemption. Somes' claim is a common-law based personal injury action, which concerns health and safety, an area traditionally regulated by the states pursuant to their police powers." *Id.* at 82.

> The *Somes* court went on to note that Unfortunately, the ADA does not specify what constitutes an airline "service," and neither the Supreme Court nor the First Circuit has interpreted the term. Nevertheless, several factors suggest that the provision of emergency medical equipment to treat in-flight medical emergencies unrelated to the actual operation of the aircraft is categorically distinct from the "services" Congress had in mind when it adopted the ADA's preemption provision, and accordingly, demonstrate that Congress did not intend by use of the term "services" to preempt Somes' claim.

*Id.* at 83. Moreover, it was determined that:

> "Airlines' 'rates' and 'routes' generally refer to the point-to-point transport of passengers. 'Rates' indicates price; 'routes' refers to courses of travel. It therefore follows that 'service,' when juxtaposed to 'rates' and 'routes,' refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided.... To interpret 'service' more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an airline does."

*Id.* (quoting *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1265–66 (9th Cir.1998)).

In this case, although UPS maintains that the Kuehnes are seeking to hold UPS liable for the service-related conduct of one of its employees, the Kuehnes' claims nonetheless sound in a common-law-based personal injury action, which concerns health and safety—an area that is traditionally regulated by the states under their police powers.

Moreover, we cannot glean from the FAAAA provisions that Congress was attempting to displace state personal injury tort law concerning incidents that involve the safety of an individual who receives a package at a doorstep. Granted, states are indeed prohibited from regulating matters relating to the price, route, or service of a motor carrier, and it is undisputed that UPS is a carrier in the service industry and that its service is the delivery of packages. However, we cannot say that state tort remedies that already existed at common law must be negated in light of such preemption statutes. Moreover, there is no showing that a remedy for a personal injury of this type significantly impacts federal deregulation in this area. Also, the FAAAA does not contain a remedy for personal injury claims. Thus, the absence of such a remedy supports a reasonable inference that Congress expected state tort actions to survive. *See Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 251, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (observing that "it is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct"); *see also Mar-*

*golis v. United Airlines, Inc.,* 811 F.Supp. 318, 324–25 (E.D.Mich.1993) (holding that because Congress has not provided any remedy for an airline passenger who suffers personal injury due to the negligence of the airline and its employees, preemption should not apply to a claim under common law negligence to recover for personal injury). For these reasons, we conclude that the trial court erred in granting UPS's motion for summary judgment.[4]

The judgment of the trial court reversed, and this cause is remanded to the trial court for trial.

FRIEDLANDER, J., and CRONE, J., concur.

---

**4.** Because we conclude that the trial court erred in granting summary judgment for UPS when considering the relevant provisions of the FAAAA, we need not address the parties' arguments regarding the applicability of the Carmack Amendment under the Interstate Commerce Act. In any event, the purpose of the Carmack Amendment is to provide an exclusive remedy for breach of contract for interstate ground shipments, including lost, delayed, or damaged packages. *Missouri Pac. R.R. v. Elmore & Stahl,* 377 U.S. 134, 138, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). The cases to which UPS directs us for the proposition that negligence claims are preempted do not involve state-based tort law claims for personal injury. Appellee's Br. p. 10.