# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2020, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Karl L. Mulvaney
Nana Quay Smith
Dentons Bingham Greenebaum LLP
Indianapolis, Indiana

James Ludlow
James F. Ludlow, Attorney at Law P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Bruce D. Jones
Keith A. Gaston
Rachel O. Webster
Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Deborah Doherty and Sandra Luedtke, as agent and attorney-in-fact for Deborah Doherty, *Appellants/Plaintiffs,* <br><br> v. <br><br> Purdue Properties I, LLC; Campus Apartments Management, LLC; Corridor, LLC; and Corridor Ventures, Inc., *Appellees/Defendants.* | June 29, 2020 <br><br> Court of Appeals Case No. 19A-CT-2807 <br><br> Appeal from the Marion Superior Court <br><br> The Hon. Kurt Eisgruber, Judge <br><br> Trial Court Cause No. 49D06-1602-CT-4909 |

**Bradford, Chief Judge.**

# Case Summary

Deborah Doherty suffers from hydrocephalus, a condition in which fluid accumulates on her brain, and has been receiving Social Security benefits related to her condition since 2010. In February of 2014, Doherty slipped and fell on snow-covered stairs outside of her West Lafayette apartment building, which was owned and operated by Purdue Properties I, LLC; Campus Apartments Management, LLC; Corridor, LLC; and Corridor Ventures, Inc. (collectively, "Purdue"). In February of 2016, Doherty and her mother Sandra Luedke (collectively, "Appellants") sued Purdue for negligence, claiming that Doherty had suffered a traumatic brain injury ("TBI") in her fall. In September of 2018, Appellants sought leave to amend their complaint to add a request for punitive damages, which request the trial court ultimately denied.

Meanwhile, Purdue had requested production of, *inter alia*, Doherty's Social Security Administration ("SSA") records. After Appellants refused to produce the SSA records, Purdue sought and obtained an order to compel them to request the release of records related to her hydrocephalus. When Appellants refused to comply with the trial court's order to compel, Purdue moved for a rule to show cause why they should not be held in contempt or sanctioned. After a hearing, the trial court ordered Appellants' complaint dismissed as a sanction for their refusal to comply with its order to compel. Appellants contend that the trial court abused its discretion in dismissing their complaint because (1) Purdue failed to establish that Doherty's SSA records were

necessary to its defense; (2) federal law prevents the trial court from ordering Appellants to request the release of the records; (3) even if the trial court had the authority to order them to request the release of the SSA records, dismissal was an inappropriate sanction for refusing to do so; and (4) the trial court abused its discretion in denying them leave to amend their complaint. Because we disagree with Appellants' first three contentions and conclude that their fourth is moot, we affirm.

## Facts and Procedural History

[3] Doherty, born in 1969, suffers from congenital hydrocephalus, a condition in which excess cerebrospinal fluid builds up within the fluid-containing cavities or ventricles of the brain. Symptoms of hydrocephalus that may be seen in adults include headache, difficulty remaining awake, loss of coordination or balance, bladder control issues, and impaired vision and cognition. Doherty began living independently in Texas in 2003, but around 2005 Doherty began having difficulty managing her money, a job, her apartment, and other aspects of living independently. In early 2008, Doherty returned to Indiana and, on February 29, underwent a neuropsychological evaluation performed by Dr. Jill Salem, Ph.D., HSPP. After Doherty's evaluation by Dr. Salem and upon her advice, Luedke applied for disability benefits for Doherty with the SSA. The SSA approved the application for disability benefits in 2010.

[4] At approximately 7:45 a.m. on February 18, 2014, Doherty left the West Lafayette apartment building in which she had been living for five years, which building was owned and operated by Purdue. The door used by Doherty led to

a set of five stairs leading up that were covered with packed snow. As Doherty attempted to climb the stairs, she lost her footing, fell backwards, and hit her head on the door frame. On February 10, 2016, Appellants filed suit against Purdue alleging, *inter alia*, negligence on the part of Purdue and that Doherty's fall had caused a TBI. Appellants claimed that Doherty's alleged accident-related TBI had caused significant cognitive and physical deficiencies that were not present before her fall.

[5] On September 21, 2018, Appellants sought leave to amend their complaint to add a request for punitive damages based on the allegation that Purdue's actions had exhibited a conscious disregard for the safety of its residents. Although the trial court initially granted Appellants leave to amend their complaint, on October 15, 2018, the trial court granted Purdue's motion to reconsider, withdrawing its leave.

[6] Meanwhile, Purdue had sought discovery of Doherty's medical records before and after her fall. On March 4, 2016, Appellants provided Purdue with a compact disc containing a number of Doherty's medical records from before and after the fall. The medical records were not made part of the record below, and it is unknown how many related to treatment for Doherty's hydrocephalus. At some point, Purdue requested that Appellants sign a request prepared by it to release Doherty's SSA records. Appellants refused to sign the release, and, on February 27, 2019, Purdue moved to compel discovery.

[7] On April 15, 2019, the trial court held a hearing on Purdue's motion to compel. At the hearing, Purdue argued that discovery had left a gap from 2008 to 2015

regarding medical records for Doherty's hydrocephalus and that her SSA records were necessary to evaluate her condition prior to and after her fall in February of 2014. Purdue also noted that Doherty herself was no longer competent to testify regarding her prior medical treatment and argued that, therefore, it was the only way to obtain the information it sought. Appellants argued that the trial court lacked the legal authority to order them to request the release of Doherty's SSA records and that they were not necessary in any event because of the medical records they had produced in March of 2016. Appellants did not admit any of those medical records at the hearing, and there is no indication of how many, if any, of them related to the treatment of Doherty's hydrocephalus. Following the hearing, the trial court granted Purdue's motion to compel discovery, ordered Purdue to modify the SSA request to limit the release of only the records necessary to fill in the gaps in Doherty's medical history, and ordered the parties to execute a confidentiality agreement.

[8] Appellants refused to comply with the trial court's order to compel, and, on July 15, 2019, Purdue petitioned for a rule to show cause why Appellants should not be held in contempt of court or, in the alternative, why they should not be sanctioned pursuant to Indiana Trial Rule 37(B). On October 29, 2019, the trial court ordered Appellants' complaint dismissed pursuant to Trial Rule 37(B)(2)(c) as a sanction for refusal to comply with the order to compel discovery.

# Discussion and Decision

# I. Whether the Trial Court Abused its Discretion in Dismissing Appellants' Complaint

[9] Appellants contend that the trial court abused its discretion in dismissing their complaint as a discovery sanction for refusing to sign a request to release Doherty's SSA records. Pursuant to Trial Rule 26(B)(1), a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action whether it relates to the claim or defense of the party seeking discovery[.]" The purpose of Indiana's discovery rules is "to allow a liberal discovery procedure" for the purpose of providing litigants "with information essential to the litigation of all relevant issues, eliminate surprise and to promote settlement." *Canfield v. Sandock*, 563 N.E.2d 526, 528 (Ind. 1990). A trial court is vested with "broad discretion in ruling on issues of discovery." *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 321 (Ind. App. Ct. 2006). Appellants argue that Purdue failed to establish that Doherty's SSA records were necessary and the trial court lacked the authority to order them to request their release even if they were. Appellants also argue that, even if the trial court properly ordered the production of Doherty's SSA records, dismissal was an inappropriately punitive sanction for their refusal to do so.

## A. Whether Purdue Established that Doherty's SSA Records were Necessary

[10] Appellants contend that Purdue failed to establish the need for Doherty's SSA records. When a discovery request is made, the trial court must first determine whether the information sought is relevant to the issue being tried. *Bishop v.*

*Goins*, 586 N.E.2d 905, 907 (Ind. Ct. App. 1992). If the information is not relevant, no further inquiry is necessary, and the discovery is prohibited. *Id.* The trial court, however, can also deny a discovery request for relevant material when it determines that information sufficient to prepare the case has already been exchanged or when the information sought has already been provided through prior discovery. *Coster v. Coster*, 452 N.E.2d 397, 400 (Ind. Ct. App. 1983). Because of the fact-sensitive nature of discovery issues, the trial court's decisions are clothed with a presumption of correctness on appeal. *Lucas v. Dorsey Corp.*, 609 N.E.2d 1191, 1197 (Ind. Ct. App. 1993), *trans. denied*.

[11] Appellants did not argue below that Doherty's SSA records were not relevant, only that they were not necessary because of the medical records they had already produced. Consequently, to the extent that Appellants argue on appeal that the SSA records were not relevant, they have waived that claim for appellate review. *See, e.g.*, *Smith v. Marion Cty. Dep't of Pub. Welfare*, 635 N.E.2d 1144, 1148 (Ind. Ct. App. 1994) ("This court has determined that a party may not raise an issue for the first time on appeal."), *trans. denied*. That leaves us with the question of whether the trial court abused its discretion in determining that the SSA records were necessary.

[12] At the hearing on the motion to compel discovery, Purdue argued that there was a gap in relevant medical records from 2008 to 2015 and noted that it had attempted to obtain additional records from Dr. Salem without success. Purdue also noted that Doherty was no longer competent to testify and personally provide more information on her medical care during the relevant time period,

arguing that that left them with no other way to obtain the information they sought. Appellants contended that the medical records they provided in March of 2016 would render production of Doherty's SSA records duplicative. None of these medical records were put into the record below, however, and Appellants did not argue, much less establish, that any of them had anything to do with the treatment or possible progression of Doherty's hydrocephalus. The trial court was free to infer from all of this, and apparently did, that there was, in fact, a gap that the already-produced records did not fill, rendering discovery of the SSA records necessary for Purdue's defense.

[13] Appellants argue that Purdue failed to establish that Doherty's SSA records were necessary to its defense because it did not introduce evidence at the motion-to-compel hearing tending to show that necessity. Appellants cite to no authority that stands for the proposition that the necessity for discovery of certain materials must be established by the introduction of evidence, and our research has failed to uncover any. It seems to us that the trial court should be able to consider the representations of the parties in such proceedings, with the parties being free to introduce evidence to support (or refute) a claim of relevance and necessity if they so desire. We believe it is worth noting that here, while Appellants contested Purdue's claim that a gap existed in Doherty's medical history, they did not point to any particular medical records or offer any other evidence to refute Purdue's claim. Given what is intended to be the informal and self-executing nature of discovery, we decline to hold that a trial court must essentially hold a full evidentiary hearing to resolve any discovery

dispute that arises. Under the circumstances, we conclude that the trial court did not abuse its discretion in this regard.

## B. Whether Federal Law Prevented the Trial Court from Ordering Appellants to Request the Release of Doherty's SSA Records

[14] Appellants contend that the Federal Privacy Act ("FPA") and SSA regulations do not permit the trial court to order them to request the release of Doherty's SSA records. Purdue, while acknowledging that the trial court lacked the authority to directly order SSA to release the records, contends that the trial court did, in fact, have the authority to order Appellants to request the release of the records.

### 1. The FPA

[15] We begin with the relevant language of the FPA, which provides, in part, as follows:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by […] the individual to whom the record pertains, unless disclosure of the record would be […] pursuant to the order of a court of competent jurisdiction[.]

5 U.S.C. §552a(b).

[16] The first step in interpreting a statute is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense.

> Clear and unambiguous statutes leave no room for judicial construction.

*City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007).

[17] Although it is undisputed that the FPA prevents the Marion Superior Court from directly ordering SSA to release Doherty's records, it does not address the situation presented by this case, where the trial court has ordered Doherty to request their release. It is well-settled that "it is just as important to recognize what a statute does not say as it is to recognize what it does say. A court may not read into a statute that which is not the expressed intent of the legislature." *Herron v. State*, 729 N.E.2d 1008, 1010 (Ind. Ct. App. 2000) (citation omitted), *trans. denied*. Congress's intent, as expressed by the plain language of the FPA, does not prohibit a state court from ordering a party to request the release the party's SSA records.

[18] That said, Appellants do not actually claim that ordering a party to request the release of its SSA records is explicitly barred by the FPA, arguing instead that such an order is essentially the same thing as a direct order to the SSA to release them. We cannot agree. While a state trial court may not directly order the SSA to release records, it *can* unquestionably order a party within its jurisdiction to comply with a discovery order, which is what occurred here. While both procedures could lead to essentially the same result, that does not mean that they are equivalent.

[19] The court in *Rodriguez v. IBP, Inc.*, 243 F.3d 1221 (10th Cir. 2001), *cert. denied*, drew the same conclusion in a case with closely analogous facts. In that case,

Rodriguez sued his former employer IBP for alleged retaliatory discharge after he was injured on the job. *Id*. at 1224. Shortly before trial, IBP became aware that Rodriguez had been receiving disability benefits and sought production of his SSA records. *Id*. at 1225. Rodriguez did not produce the records before trial, which ended with a jury verdict in his favor and an award of damages. *Id*. IBP filed a post-trial motion seeking an order requiring Rodriguez to request the release of his SSA records, which it hoped to use to reduce the award of damages. *Id*. The district court granted IBP's motion, and when Rodriguez failed to execute the request for the records, it found him in contempt. *Id*.

[20] Rodriguez argued on appeal that the district court did not have the authority to order him to request the release of his SSA records, citing to 42 U.S.C. §1306(a), which provides, in part, that

> [n]o disclosure of any […] record […] obtained at any time by the Secretary or by any officer or employee of the Department of Health and Human Services in the course of discharging the duties of the Secretary under this chapter […] shall be made except as the Secretary may by regulations prescribe[.]

The Tenth Circuit Court of Appeals noted that subsection (b) of the same statute, along with 20 C.F.R. §401.100(a), permitted release of an individual's SSA records with the individual's consent and concluded that the district court did, in fact, have the authority to order Rodriguez to provide that consent. *Rodriguez*, 243 F.3d at 1230 (citing *United States ex rel. Woodard v. Tynan*, 776 F.2d 250, 252 (10th Cir. 1985) (*en banc*) (concluding that federal district courts have the authority to order defendants to request release of their records from

parties maintaining them so defendants can comply with discovery obligations)).

The *Rodriguez* court drew the same distinction we draw today:

> Rodriguez claims the Social Security Administration regulations do not allow a district court to order the release of Social Security records. The regulation governing orders from the court, however, does not apply in this case because the order directed Rodriguez to sign a release. The district court did not order the Social Security Administration directly to release the records.

*Rodriguez*, 243 F.3d at 1230 n.5. We agree with the *Rodriguez* court that ordering a party to comply with discovery is not the same thing as ordering the SSA to release records, even if the result is the same.

Appellants also argue that a trial court cannot order a party to request the release of SSA records because such a request would not be "voluntary." We disagree and think, in fact, that it is something of a misnomer to characterize the compelled production of Doherty's SSA records as involuntary, given that Appellants themselves put Doherty's medical history in issue. This court has recognized that the right to privacy, "like any other right that resides in an individual, may be waived or lost. It is waived by express or implied consent and lost by a course of conduct which estops its assertion." *Cont'l Optical Co. v. Reed*, 119 Ind. App. 643, 649, 86 N.E.2d 306, 309 (1949). As an illustration of this principle in action, the Indiana Supreme Court has concluded that "when a patient who is a party to a lawsuit places his mental or physical condition in issue, he has done an act which is so incompatible with an invocation of the physician-patient privilege as to that condition that he has impliedly waived the

privilege to that extent." *Canfield v. Sandock*, 563 N.E.2d 526, 529 (Ind. 1990). We find the holding of *Canfield* to be equally applicable to the asserted privacy right in this case. Consequently, we conclude that Appellants cannot withhold materials relevant to Doherty's medical history on the basis that their production would be "involuntary" when they themselves put her medical history in issue.

[23] Appellants nonetheless draw our attention to two federal cases that they claim stand for the proposition that a request for the release of SSA records must be voluntary. Neither case stands for this proposition. When the court in *Wheeler v. City of Orlando*, 2008 WL 5111244 (M.D. Fla. 2008), concluded that Orlando was not entitled to an order to request the release of Wheeler's SSA records, it was on the basis that the records would be "duplicative under [the] circumstances[,]" not because the request would have been involuntary. *Id*. at *3. Similarly, the court in *In re Becker*, 2010 WL 3119903 (Bankr. W.D. Tex. 2010), declined to order the release of SSA records, also not because such a release would have been involuntary but, rather, because the party seeking them "ha[d] not demonstrated the relevancy of the information sought through the waivers, nor shown cause that further compelled disclosure of […] SSA information [wa]s necessary." *Id*. at *4. *Wheeler* and *Becker* do not help Appellants.

## 2. Federal Preemption Doctrine

[24] Appellants also argue that the federal preemption doctrine prevents the trial court from ordering them to request the release of Doherty's SSA records.

Appellants contend that the trial court's order to execute the release conflicted with federally-mandated protections against the unwanted disclosure of SSA records and circumvented the allegedly-mandatory federal procedure for obtaining such records via an order from a court of competent jurisdiction. Pursuant to the federal preemption doctrine, state laws that interfere with, or are contrary to, federal law are invalidated. *Kuehne v. United Parcel Serv., Inc.*, 868 N.E.2d 870, 873 (Ind. Ct. App. 2007). "By the same token, a cardinal rule of preemption analysis is the 'starting presumption that Congress d[id] not intend to supplant state law.'" *Id.* (quoting *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995)) (brackets in *Kuehne*). "Moreover, the presumption against preemption takes on added significance 'where federal law is said to bar state action in fields of traditional state regulation.'" *Id.* (quoting *New York State Conf. of Blue Cross & Blue Shield Plans*, 514 U.S. at 654).

[25] The doctrine of federal preemption has three branches: (1) express preemption, where a statute expressly defines the scope of its preemptive effect; (2) field preemption, where a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area; and (3) conflict preemption, where it is impossible to comply with both federal and state law, "or where state law stands as an obstacle to the accomplishment and execution of federal purposes and objectives." *Id.* "Put another way, congressional intent to preempt state law can be found in the explicit language of a statute, implied from the existence of a comprehensive regulatory scheme,

or inferred when the state law in question directly conflicts with a federal law or stands as an obstacle to achievement of federal objectives. *Id.* (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984)). "'The question, at bottom, is one of statutory intent, and we accordingly begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Micronet, Inc. v. Ind. Util. Reg. Comm'n*, 866 N.E.2d 278, 288 (Ind. Ct. App. 2007) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (internal quotation marks and citations omitted)), *trans. denied*.

[26] As mentioned, the FPA provides for the release of SSA records pursuant to a written request by the individual to whom the record pertains or an order from a court of competent jurisdiction. 5 U.S.C. § 552a(b). As for express preemption, it does not apply here because section 552a does not explicitly prevent state courts from ordering litigants to request release of SSA records. The same missing language (or lack of any other language indicating that Congress intended to exclusively regulate the field) fatally undermines Appellants' field-preemption argument.

[27] Appellants, however, focus primarily on their conflict-preemption claim, arguing that allowing the Marion Superior Court to order them to authorize the release of Doherty's SSA records "nullifies the purpose for which these regulations exist[,]" which is to "protect these sensitive documents from public disclosure in civil litigation where their confidentiality cannot be guaranteed." Appellants' Br. p. 26. We do not believe that a court order to request the

release of SSA records does any such thing. While the clear intent of Congress in enacting the FPA was to protect sensitive documents from unwarranted disclosure, that protection is not without limits, with the FPA itself including two procedures through which records can be released, one of which is when the relevant individual requests it. We cannot agree that using a statutory method to secure the release of SSA documents thwarts the purpose of the very statute in which it appears.

[28] Appellants draw our attention to *In re Beck's Superior Hybrids, Inc. v. Monsanto Co. et al.*, 940 N.E.2d 352 (Ind. Ct. App. 2011), which stands for the proposition that parties may not use the Indiana Trial Rules to accomplish discovery where that discovery is exclusively governed by methods provided by federal law. *Id.* at 367–68. While the holding in *Beck's Superior Hybrid* might have relevance in this case if an order from a court of competent jurisdiction (*i.e.*, a federal court) were the only way to secure the release of SSA records, that is not the case. As mentioned, Purdue is seeking to obtain Doherty's SSA records via a request from her to release them, which is also a procedure permitted by the FPA and is not equivalent to seeking a court order. Our opinion in *Beck's Superior Hybrids* does not help Appellants.

### 3. Use of SSA Records in Civil Cases

[29] Appellants also argue that federal law prohibits the release of SSA records for use in civil cases, citing to 20 C.F.R. §401.180. Section 401.180, however, only applies to the release of SSA records pursuant to an order from a court of competent jurisdiction:

We disclose information in compliance *with an order of a court of competent jurisdiction* if—

    (1) another section of this part specifically allows such disclosure, or

    (2) SSA, the Commissioner of Social Security, or any officer or employee of SSA in his or her official capacity is properly a party in the proceeding, or

    (3) disclosure of the information is necessary to ensure that an individual who is accused of criminal activity receives due process of law in a criminal proceeding under the jurisdiction of the judicial branch of the Federal government.

20 C.F.R. §401.180(e) (emphasis added). Because Purdue did not seek the release of Doherty's SSA records via a direct court order, this regulation has no bearing on this case.

## C. Dismissal as a Sanction

Appellants contend that even if the trial court did not abuse its discretion in ordering them to request a release of Doherty's SSA records, ordering the dismissal of their complaint as a sanction was unduly punitive. We will reverse a trial court's decision regarding sanctions imposed for violating a discovery order issued pursuant to Indiana Trial Rule 37(B)(2)(c) only for an abuse of discretion. *Marshall v. Woodruff*, 631 N.E.2d 3, 5 (Ind. Ct. App. 1994). A discovery sanction is an abuse of discretion "if it is clearly against the logic and circumstances before the court, or when the trial court has misinterpreted the law." *Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 649 (Ind. Ct. App. 2008).

Discovery matters are fact-sensitive by nature and, therefore, a trial court's ruling "is cloaked with a strong presumption of correctness on appeal." *Scroghan*, 851 N.E.2d at 323. "Trial [Court] Judges stand much closer than an appellate court to the currents of litigation pending before them, and they have a correspondingly better sense of which sanctions will adequately protect the litigants in any given case." *Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012). "Absent clear error and resulting prejudice, the trial court's determination with respect to violations and sanctions should not be overturned." *Carter v. Robinson*, 977 N.E.2d 448, 455 (Ind. Ct. App. 2012), *trans. denied*. In determining whether a sanction is just, we recognize that Indiana "has a marked judicial deference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations." *Prime Mortg.*, 885 N.E.2d at 649.

As the Indiana Supreme Court has stated,

> The purpose of the discovery rules is to allow for minimal trial court involvement and to promote liberal discovery. Although concealment and gamesmanship were once accepted as part and parcel of the adversarial process, we have unanimously declared that such tactics no longer have any place in our system of justice. Today, the purpose of pretrial discovery is to make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.
>
> In service of that goal, Indiana Trial Rule 37(B)(2)(c) expressly provides that a trial court may impose sanctions, including outright dismissal of the case or default judgment, if a party fails to comply with an order to compel discovery. As the U.S. Supreme

> Court has explained, the purpose of sanctioning discovery violations is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976).

*Whitaker*, 960 N.E.2d at 115 (partially cleaned up).

[33] Under the circumstances of this case, we conclude that Appellants have failed to establish an abuse of discretion in this regard. Appellants failed to produce Doherty's SSA records when they were requested, forcing Purdue to seek and obtain an order to compel discovery from the trial court. Appellants then violated the order to compel when they still refused to produce Doherty's SSA records. Dismissal has often been upheld as an appropriate sanction in similar cases, and we see nothing in the record to suggest that this case is materially different. *See, e.g.*, *Peters v. Perry*, 877 N.E.2d 498, 499 (Ind. Ct. App. 2007) (concluding that default judgment was appropriate sanction where plaintiff refused to answer interrogatories and violated order to compel response); *Pfaffenberger v. Jackson Cty. Reg'l Sewer Dist.*, 785 N.E.2d 1180, 1184–85 (Ind. Ct. App. 2003) (same); *Wozniak v. N. Ind. Pub. Serv. Co.*, 620 N.E.2d 33, 36 (Ind. Ct. App. 1993) (concluding that default judgment was appropriate sanction where plaintiff refused to comply with requests for production and violated order to compel), *trans. denied*.

[34] If anything, the need for dismissal is even more compelling in this case, as Appellants refused to comply with the order to compel despite the order being limited to only those records necessary to fill in the gaps in Doherty's medical

history and including an order for the parties to execute a confidentiality agreement. It seems to us that the trial court went out of its way to strike an appropriate balance between protecting Doherty's privacy interests and Purdue's interest in being able to effectively defend itself against Appellants' claims. That effort, however, still did not result in Appellants' compliance. Under the circumstances, we cannot say that the trial court's dismissal of Appellants claim amounts to an abuse of discretion.

[35] Appellants contend that the trial court should have imposed a lesser sanction for their noncompliance with its motion to compel, such as a small monetary sanction, or, in the alternative, should have granted its motion to certify its challenge to the order for interlocutory appeal. We note that a trial court is under no obligation to impose a lesser sanction before ordering dismissal pursuant to Trial Rule 37. *Bankmark of Fla., Inc. v. Star Fin. Card Servs., Inc.*, 679 N.E.2d 973, 978 (Ind. Ct. App. 1997). Appellants nonetheless contend that either of their suggested approaches would have allowed them to obtain appellate review[1] of the trial court's motion to compel without jeopardizing their claim. While this may be true, the point of the sanctions is to punish the party who violates discovery orders and deter future violations. *See Whitaker*, 960 N.E.2d at 115. In the end, imposing a sanction that a recalcitrant party requests for their convenience does not strike us as much of a sanction.

---

[1] Even if the trial court had certified the challenge for interlocutory appeal, we still would have had to accept jurisdiction, by no means a foregone conclusion.

## II. The Motion to Amend Complaint

Finally, Appellants contend that the trial court abused its discretion in ultimately denying their September 21, 2018, motion to amend their complaint to add a claim for punitive damages based on the allegation that Purdue's actions had exhibited a conscious disregard for the safety of its residents. In light of our affirmance of the trial court's dismissal of Appellants' claim as a sanction for the violation of a discovery order, this claim is moot. "[W]hen we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination 'where absolutely no change in the status quo will result.'" *Jones v. State*, 847 N.E.2d 190, 200 (Ind. Ct. App. 2006) (citation omitted), *trans. denied*. Even if we were to determine that the trial court abused its discretion in denying Appellants' leave to amend their complaint, such a determination would have no effect on the trial court's dismissal, which was based on Appellants' completely-unrelated refusal to produce Doherty's SSA records.

## Conclusion

We conclude that (1) the trial court did not abuse its discretion in determining that Doherty's SSA records were discoverable, (2) neither relevant federal law nor the federal preemption doctrine prevented the trial court from ordering Appellants to request their release, and (3) the trial court did not abuse its discretion in dismissing Appellants' claim as a sanction for refusing to comply with its order to request their release. We further conclude that Appellants'

claim that the trial court abused its discretion in denying them leave to amend their complaint is moot.

[38] The judgment of the trial court is affirmed.

Baker, J, and Pyle, J., concur.